39853, 39854.   STUART v. BERRY; and vice versa.

Decided February 20, 1963—
Rehearing denied March 28, 1963.

*Swift, Pease, Davidson & Chapman, Wm. G. Scranton, Grogan & Jones, T. Milton Jones, Hatcher, Smith, Stubbs, Land & Rothschild, Albert W. Stubbs,* for plaintiff in error.

*Kelly, Champion & Henson, Forrest L. Champion,* contra.

RUSSELL, Judge. ■ ■ It is proper, where a pleading contains objectionable and irrelevant matter, for the trial court to require the litigant to replead and purge his petition of such matter. *Shaw v. Miller,* 215 Ga. 413 (1c) (110 SE2d 759); *Duke v. Brown,* 113 Ga. 310 (11), 319 (38 SE 764). The objection to the allowance of the repleaded petition is without merit.

■ The petition as repleaded is identical with the matter contained in the original and the three amendments thereto with these exceptions: matter stricken by special demurrer is deleted, and some paragraphs are renumbered. Because certain special demurrers on which error was assigned attacked the constitutionality of a statute, this court transferred the bill of exceptions to the Supreme Court, acting in view of its interpretation of *Ray Clanton's East Georgia Motors, Inc. v. Conaway,* 100 Ga. App. 650 (112 SE2d 218) where it had been held: "The ruling on the motion to purge . . . the plaintiff's petition of all reference to the defendant who had been previously dismissed as a party would in no way affect the sufficiency of the plaintiff's petition as against demurrer, and the judgment of April 17, 1959, overruling the demurrers was a final judgment as to such issue and not one referred to in the act of 1952 [*Code Ann.* § 81-1001] which requires a later final judgment after the time for amendment has expired. It necessarily follows that the trial court was bound by the law of the case to hold

on July 1, 1959, that the purported renewed and additional demurrers must be overruled, and this court is bound by the law of the case, right or wrong, in the absence of any assignment of error on the antecedent judgment. . ." Here there was an assignment of error on the antecedent judgment overruling demurrers to the petition as amended prior to repleading. The Supreme Court, however, in *Stuart v. Berry*, 218 Ga. 361 (127 SE2d 912) found that no question regarding the constitutionality of a statute remained in the case, that it had no jurisdiction, and that: "The above quoted rule from the act of 1952 [*Code Ann.* § 81-1001], as construed by this court and the Court of Appeals, renders moot the overruling of the demurrers to the original petition, to the three amendments, and to the petition as amended. The sole question for review in the main bill of exceptions is the validity of the repleaded petition." The same rule would, of course, be applicable to the cross-bill of exceptions. This court being bound by the ruling of the Supreme Court to the effect that all demurrers prior to the repleading are moot, and that only the validity of the petition as repleaded is in issue, will pass only on such demurrers, renewed after the filing of the repleaded petition, as properly attack allegations contained in the repleaded petition. This does not include assignments of error by the plaintiff contained in the cross-bill of exceptions to the sustaining of special demurrers to the petition as originally amended regarding matter deleted by the repleading. Neither does it include assignments of error by the defendant contained in the main bill of exceptions to the overruling of special demurrers to certain paragraphs of the original petition or amendments thereto designated only by number, where it appears that in repleading the paragraphs have been renumbered so as to make such demurrers inapplicable to the paragraphs against which they recite that they are directed. "A demurrer, being a critic, must itself be free from fault." *Monday v. Life &c. Ins. Co. of Tenn.*, 82 Ga. App. 650 (62 SE2d 197).

◼ It is well established that while it is contrary to public policy to permit parties to a contract to establish by agreement *inter sese* what acts in the performance of the agreement would set the standard of ordinary care as to third parties not signa-

tories thereto who are injured during its performance, *State Construction Co. v. Johnson*, 88 Ga. App. 651, 656 et seq. (77 SE2d 240), yet the contract, at least where one of the parties is a municipality or other public body and the work is for the benefit of the public, may be pleaded and introduced in evidence by a member of the public so injured, for the reason that it constitutes not the foundation of the action but merely matter of inducement, and the additional reason that, the contract being for the benefit of the public generally, it is relevant to establish the nature and scope of the duties of the contractor toward the public. *Freeman v. Macon Gas Light &c. Co.*, 126 Ga. 843, 847 (56 SE 61, 7 LRA (NS) 917); *Georgia R. & Bkg. Co. v. Sewell*, 57 Ga. App. 674, 682 (196 SE 140). On the other hand, a mere breach of warranty or violation of a contractual obligation will not support a right of action by a third party in tort where such third party could not recover independently of the contract provision. *Code* § 105-106; *Hand v. Harrison*, 99 Ga. App. 429 (2) (108 SE2d 814).

This petition by the widow alleges that her husband, while a guest upon the premises of others not parties to this action, was electrocuted when, while swimming in a lake on the premises, he attempted to climb a metal ladder leading to his hosts' dock and received an electric shock caused by the negligence of the defendant who had, pursuant to a contract with the owners, installed lights in the dock area but had negligently failed to insulate the electric conductors properly, with the result that a short circuit occurred, the dock rails and ladder became electrified, and the deceased received a fatal charge of electricity through the ladder when he attempted to pull himself out of the water. One of the contract provisions was that all work should be performed in accordance with the requirements of the National Electric Code. Paragraph 12 sets out pertinent Code provisions, and paragraph 19 (e) alleges negligence in failing to install the wiring in accordance therewith. There are no demurrers applicable to paragraphs 12 and 19 (e) of the re-pleaded petition, so the question of whether the plaintiff could rely on negligence of the defendant in failing to comply with the National Electric Code is not presented. Since the contract

536

constitutes matter of inducement germane to the cause of action it was not error to overrule the special demurrers to paragraph 4. It is further alleged that while the original contract provided for "no wiring for boathouse or dock," it did provide for change-orders, and that the boathouse and dock were subsequently wired pursuant to change-order. Since it appears from the petition that the dock and boathouse installation constituted a single work unit (the petition speaks of a single "wiring system" with underground connector and a light switch controlling the dock and boathouse lights placed between the two structures), no valid objection exists to pleading and proving that neither installation was grounded. This ruling applies to demurrers 13 (a) and 26.

■ Paragraphs 9, 11 and 19 (a) allege that the defendant was negligent in failing to provide any ground for the electric wiring at the boathouse or dock. In view of the allegations of paragraph 18 that grounding of such a system is recognized and accepted by the electrical industry as a basic necessity for the safety and protection of human life, and that defendant failed to observe a basic safety practice, the allegation is not a conclusion. Special demurrers 13 (b), 17 and 28 were properly overruled. The same ruling applies to special demurrers 18, 27, and 30 to paragraphs 11, 18, 19 (c) and 30 of the petition.

■ Special demurrers 33 and 34 complain of the plaintiff's characterization of the ladder on which her husband was electrocuted as being a "lurking death trap" on the sole ground that it is a conclusion without supporting factual allegations. The language is vivid, perhaps inflammatory, but it is a conclusion well justified by the factual averments that, due to the defendant's negligence, uninsulated wires carrying an electric charge were allowed to come in contact with a metal railing, along which the current proceeded to the metal ladder and presumably down the ladder to the water. The swimmer, grasping the ladder in search of safety, met instead with fatal peril. The language is certainly supported by the facts stated, and this objection is without merit. The petition states a cause of action for the death of the plaintiff's husband. The remaining special demur-

rers not dealt with herein are either moot or have been abandoned by the plaintiff in error.

■ In the cross-bill of exceptions error is assigned on the overruling of numerous special demurrers to the defendant's answer. "Assignments of error not insisted upon by counsel in their briefs or otherwise argued in this court will be treated as abandoned. A mere recital in the brief of counsel of the existence of an assignment of error, without argument or citation of authorities in its support, is insufficient to save it from being treated as abandoned. *Head v. Lee,* 203 Ga. 191 (5) (45 SE2d 666) and citations." *The B-X Corporation v. Jeter,* 210 Ga. 250 (4) (78 SE2d 790).

The plaintiff argues only her general demurrer to paragraph 20 of the answer, which alleges: "At the time [defendant's] employees installed electrical wiring on the dock of Willard B. Joy there was no ladder of any kind on or attached to said dock. If, as alleged by the plaintiff, on the evening of August 12, 1961, plaintiff and her late husband, Paul Berry, were invited to the home of the said Willard B. Joy and about midnight, when the lights of the dock were on, just before plaintiff and her late husband were to leave to return home, the said Paul Berry went for a short swim in Lake Oliver from said dock; if he swam around to near the ladder and, unaware of any danger, took hold of said ladder with both hands to ascend from the water and upon doing so received a severe electrical shock from which he slumped over into the water at the base of the ladder where he died; and if the direct and proximate cause of his death was the electrical shock received by him; then the installation of said ladder by parties unknown to defendant intervened between the wiring work of defendant and the alleged electrocution of the said Berry and constituted the proximate cause of the electrocution of the said Berry, if he was, as plaintiff alleges, electrocuted by touching said ladder."

Upon the principle that persons are responsible for the usual and natural results of their acts, one may be liable for an injury resulting from his negligence although he could not reasonably have anticipated the particular injury inflicted, or that the particular person would be injured. *Mitchell v. J. S. Schofield's*

*Sons Co.,* 16 Ga. App. 686 (85 SE 978). If his negligence puts in motion other causal forces which are the direct, natural and probable consequences of his original act, then he may be liable although he did not foresee the precise forces through which his negligence would travel and act upon the injured person. *Louisville &c. R. Co. v. Ellis,* 54 Ga. App. 783 (189 SE 559). For the act of another to insulate the first wrongdoer from the result of his negligence, it must appear that the second act is in and of itself sufficient to stand as the cause of the misfortune. *Atlanta &c. R. Co. v. Reese,* 28 Ga. App. 275 (110 SE 750); *Spires v. Goldberg,* 26 Ga. App. 530 (106 SE 585). "One who negligently creates a dangerous condition cannot escape liability for the natural and probable consequences thereof, although the innocent act of a third person may have contributed to the result." 38 Am. Jur. 731, Negligence, § 73. The defendant here must be presumed to have known that electricity travels along metal surfaces; that unless properly insulated the electric charge would travel to the metal portions of the dock, and that a person touching one of such portions would be likely to sustain injury. It is true that the danger may have been increased by the fact that the metal ladder connected the dock railing with the lake water, but the installation of the ladder was not alleged to have been a negligent act. The defendant should have anticipated danger from his negligence; the fact that the precise location of the point of impact on the decedent was unknown to him, or even the fact that it did not exist at the time he allegedly created the dangerous situation, is not a defense in law. "If the negligent act of a person is according to human experience calculated to induce or invite disaster through the negligence of another, he cannot rely upon the doctrine of an intervening cause to insulate him from liability." *Smith v. Harrison,* 92 Ga. App. 576, 582 (89 SE2d 273). It was error to overrule the demurrer to this paragraph of the answer.

*Judgment affirmed on the main bill of exceptions. Judgment affirmed in part and reversed in part on cross-bill. Felton, C. J., and Eberhardt, J., concur.*