39915. FORD MOTOR COMPANY v. WILLIAMS et al.

22

DECIDED MAY 16, 1963—REHEARING DENIED JUNE 17, 1963.

*James H. Asher, Jr., Hansell, Post, Brandon & Dorsey, J. William Gibson,* for plaintiff in error.

*Benj. B. Blackburn, III, Ezra E. Phillips,* contra.

EBERHARDT, Judge. ■ Ford contends its last general demurrer should have been sustained because a general demurrer to the original petition was sustained and thus became the law of the case. The procedural history of the case begins with the filing of the original petition in two counts on November 18, 1959. General demurrers to both counts, as well as duplicity and misjoinder demurrers, were sustained with 30 days granted to amend. After that order, plaintiff amended within the 30 days allowed and four times thereafter. On each occasion, Ford demurred or renewed its demurrers. Finally on July 6, 1962, the plaintiff was ordered to "file an amendment striking all previous pleadings and setting forth his claim in a completely re-drafted pleading stating his present contentions," with the defendant ordered "to file such answers, demurrers and objections as they deem appropriate to the re-drafted pleading." This the plaintiff did and the recast petition was ordered filed, "subject to objection or demurrer." Ford filed some 62 demurrers, general and special, all of which were overruled.

We think that the trial judge's order to recast the petition and refile defensive pleadings eliminated any question of "law of

the case" and also any question of acquiescence under *Code Ann.* § 81-1001, as amended. See *Berry v. Stuart,* 218 Ga. 361 (127 SE2d 912) ; *Stuart v. Berry,* 107 Ga. App. 531 (130 SE2d 838).

■ ■ The next question presented is whether Ford is liable in view of *Code* § 4-312, which provides "The principal shall not be liable for the wilful trespass of his agent, unless done by his command or assented to by him." The Supreme Court has held that *Code* § 4-312 must be construed in pari materia with *Code* § 105-108 and, so construed, means that the principal "may be liable if the trespass was committed by his *implied* command or *implied* assent; and if committed within the scope of the agency, the implication will arise as a matter of law." *Planters Cotton-Oil Co. v. Baker,* 181 Ga. 161, 163 (181 SE 671). The same defense was raised in a factual situation similar to that sub judice and the court concluded it had no merit in *Young v. Western &c. R. Co.,* 39 Ga. App. 761, 768 (148 SE 414).

■ Ford further argues that the allegations do not show its agent to have been in the scope of his employment because his duties are alleged to be to recover his employer's property and the petition clearly alleges that the property seized belonged to plaintiff. The allegation that defendant's agent entered plaintiff's home "for the purpose of removing therefrom personal property belonging to the plaintiff," if taken alone, may lend credence to Ford's position. However, on general demurrer, a petition, like a charge of the court, ought not to be "torn to pieces and scattered in disjointed fragments" (*Brown v. Matthews,* 79 Ga. 1, 4 SE 13) but should be considered as a whole, for the demurrer "goes to the whole pleading to which it is addressed." *Beck & Gregg Hdw. Co. v. Associated Transport, Inc.,* 210 Ga. 545 (3) (81 SE2d 515).

We are aware of the strict construction rule, the intonation of which has so often sounded the death knell of a petition, but it should not and does not prevent the court from recognizing the true and full import of *all* the allegations, going beyond mere trivialities that may seem to lie as obstructions to substantial justice. The rule should not be employed to reach illogical results. "[I]t is a well-settled rule of construction that what is clearly implied is as much a part of a pleading as what

is expressed; and considering the instant petition as a whole, we think that the requisite allegation was necessarily implied." *Toler v. Goodin,* 200 Ga. 527, 534 (37 SE2d 609). While "a petition must be construed on demurrer most strongly against the pleader, . . . this rule should not be perverted by unwarranted and strained construction," *Neal v. Stapleton,* 203 Ga. 236, 245 (46 SE2d 130), "in violation of its reasonable and necessary intendment." *New Cigar Co. v. Broken Spur,* 103 Ga. App. 395 (119 SE2d 133). "A strained and unnatural construction will not be given [pleadings] in order to raise an inference against the pleader." *National Fire Ins. Co. v. Banister,* 104 Ga. App. 13 (1) (121 SE2d 46). To the same effect, see *Williams v. Porter,* 202 Ga. 113, 118 (42 SE2d 475); *Epps v. Southern Bell Tel. &c. Co.,* 98 Ga. App. 252 (1) (105 SE2d 361); *G. & R. Waterproofing Co. v. Brogdon,* 104 Ga. App. 112, 114 (121 SE2d 77); *Burke v. Life Ins. Co. of Ga.,* 104 Ga. App. 865, 867 (123 SE2d 426). It would be a strained, unnatural and unreasonable construction to say other than that the clear and unmistakable import of the petition here, when taken as a whole, is to allege that the defendant's agent entered plaintiff's home and seized property *which he apprehended to be that of his employer, Ford, but which in truth and in fact was that of the plaintiff.* The allegation is that the property seized *was* that of the plaintiff; it is not alleged that it was seized *as* the property of the plaintiff. Certainly one can not read the petition without getting that impression and, as in *Toler,* we think that the implication is as much a part of the pleading as the express allegations. In addition, there are sufficient general allegations of agency and whether or not the agent was acting within the scope of his employment is a question of fact for the jury. *Atlanta Hub Co. v. Jones,* 47 Ga. App. 778, 779 (2) (171 SE 470) and citations; *Personal Finance Co. v. Whiting,* 48 Ga. App. 154 (2) (172 SE 111); *American Security Co. v. Cook,* 49 Ga. App. 723 (2) (176 SE 798); *Candace, Inc. v. Newton,* 91 Ga. App. 357 (85 SE2d 616); *Delta Finance Co. v. Ganakas,* 93 Ga. App. 297 (91 SE2d 383). The cases cited by Ford are all distinguishable in that either the allegations of agency were held insufficient or there was no "connection" of the act complained of with the employment.

■ Thus it is that the general objections raised by Ford are insufficient to support a general demurrer to the entire pleading. No other reasons are advanced against upholding count 1 and count 2 and they set out causes of action for general and special damages respectively.

■ Count 3 is apparently based on an invasion of privacy and requires further examination. Ford insists on its general and special demurrers to count 3. The contention is that an action for invasion of privacy is available only when another action is not; more specifically, that it is not available when a trespass action, such as count 1 here, is pleaded.

While it may be said that this is one of the reasons that the protection of privacy was recognized as a separate remedy, it does not fully explain the common law evaluation of the right. "Throughout their growth the courts have recognized the cultivation of the interests in privacy slowly, at first only by protecting them when they were associated with some other long recognized interest and in so doing creating a type of parasitic damages. This was particularly true in the earlier cases. A common instance in this connection is trespass to land and to person which frequently constitutes an intrusion upon some privacy interest as well. . . Gradually, however, courts began to grant relief on the theory of a violation of the interest in privacy itself even though the factual situation might be stretched into one of the usual, more technical grounds, such as trespass, property right or assault."[2] 1 Harper & James, The Law of Torts, § 9.5, at 678-9 (1956). Viewed in this background it can be said that the *separate* recognition of a right of privacy split off this element of damages, allowing the maintenance of an action based on privacy alone. This conclusion is illustrated by

[2] The cases are collected in Annot., 138 ALR 22, 98, 102. Most antedate judicial recognition of the right of privacy in the jurisdictions involved. See, Anonymous, Minor (Ala.) 52, 12 AD 31, an 1821 case allowing recovery for injury to reputation because of a trespass. At least 26 states and the District of Columbia have now recognized the right, while, so far as we have found, only Rhode Island and Texas have rejected it. 1

the leading American privacy case of *Pavesich v. New England Life Ins. Co.*, 122 Ga. 190 (50 SE 68, 69 LRA 101, 106 ASR 104, 2 AC 561). There, the two-count petition sounded not only in privacy, but also contained a count seeking recovery for libel. While there are a number of Georgia cases in which the factual situation clearly showed a trespass, the point involved here was not discussed.[3] However, the Montana case of Welsh v. Pritchard, 125 Mont. 517 (241 P2d 816) upheld an action laid both in trespass and invasion of privacy.[4] Notwithstanding the unusual facts of that case, we think the conclusion sound and hold that both actions may be maintained here. "Often no other remedy exists, but if one is concurrent it does not obliterate the right of privacy." Bennett v. Norban, 396 Pa. 94 (151 A2d 476).

It is urged, and we agree, that *McKown v. Great A. & P. Tea Co.*, 99 Ga. App. 120 (107 SE2d 883) is conflicting with what we here hold. In that case recovery was sought in one count for slander and in another for an invasion of the right of privacy alleged to have arisen from the same transaction when the defendant's store manager went to the dental office where plaintiff

---

Harper & James, Law of Torts, p. 682, footnote 13 (1956); Prosser, *Privacy*, 48 Cal. L.R. 383, 386 (1960); Annots. 138 ALR 22, 168 ALR 446; 14 ALR2d 750.

The right is now recognized in connection with the membership rolls of private organizations. "[T]he need for a pervasive right of privacy against government intrusion has been recognized, though not always given the recognition it deserves." Gibson v. Florida Committee, 372 U.S. 539 (83 SC 889, 9 LE2d 929).

[3]The cases show an invasion of (a) home: *Young v. Western &c. R. Co.*, 39 Ga. App. 761, supra; *Walker v. Whittle*, 83 Ga. App. 445 (64 SE2d 87) (plaintiff was wife of property owner in both cases); see, *Sheftall v. Zipperer*, 133 Ga. 488 (66 SE 253, 27 LRA (NS) 442); (b) hotel room: *Newcomb Hotel Co. v. Corbett*, 27 Ga. App. 365 (108 SE 309); (c) ship's stateroom: *Byfield v. Candler*, 33 Ga. App. 275 (125 SE 905); (d) hospital room: *McDaniel v. Atlanta Coca-Cola Bottling Co.*, 60 Ga. App. 92 (2 SE2d 810) (invasion by microphone only).

[4]Forcible entry was also involved but does not change the result. A case note criticizing on much the same basis as that advanced here by Ford is found in 33 Ore. L.R. 87 (1953).

worked and, in the presence of her employer and a number of his patients charged her with having stolen a pen and secreted it in her bag when she had shopped at the store. It was held that "since all slander cases necessarily involve the right of privacy against slander, the right of privacy is involved but the gist of the action is still slander in such cases and not invasion of privacy."

This holding of *McKown* is, as we view it, in conflict with that of *Pavesich v. New England Life Ins. Co.*, 122 Ga. 190, supra, where a petition was brought in two counts, one for libel and the other for invasion of privacy, and the court held both to be good. It could have been, and doubtless was, argued in that case that all libel cases necessarily involve the right of privacy against libel but that the gist of the action was still libel and not invasion of privacy. If so, that argument was rejected by the Supreme Court. We believe that the courts of most of our sister states have likewise rejected it. See Anno. 138 ALR 22 and other references cited in footnotes 2, 6 and 7. For example, in Bennett v. Norban, 396 Pa. 94, 97, supra, where the facts were very similar to those in *McKown*, it was rejected. There the plaintiff was accosted by the store manager after she had departed and at a point some twenty feet out into the street where he openly charged her with shoplifting. The court, observing that the plaintiff was presumably innocent, as are all people prior to conviction of crime, asserted: "[U]nder such facts . . . the privacy of a presumably innocent woman is invaded by a charade on the public highway that destroys her seclusion and subjects her to humiliation by suggesting that she is a felon." In dealing with this problem it must be kept in mind that "The right of privacy is not a branch of the law of defamation although it has sometimes been treated as such. Care must be taken not to confuse the two actions. In actions to recover damages for defamation truth is a defense; in actions to recover for invasion of privacy it is not. Damages in actions of defamation are for an injury to reputation, while damages in actions for invasion of privacy are for injury to one's own feelings." From footnote 5 in Hull v. Curtis Pub. Co., 182 Pa. Super. 86 (125 A2d 644). Insofar as *McKown* holds that there

can not be a right of action for the invasion of privacy growing out of a transaction which also gives rise to an action for defamation—libel or slander—it must yield to *Pavesich* and will not be followed.

It should be observed that there may be an element of defamation in the case that we here consider. If the conduct of the defendants, as alleged in the petition, was performed in the view or presence of the plaintiff's neighbors it was calculated to suggest that he was a felon. Though the charge may not have been made by any spoken word, yet the effect of the defendants' conduct was nonetheless defamatory, just as are the derogatory signs and signals of a deaf-mute made in the presence of others who understand them. The fact that this element may be present here does not exclude the presence also of a trespass and an invasion of privacy flowing from the same conduct.

(b) The second privacy question posed is whether there can be an invasion of plaintiff's privacy by entering his house when no one was at home. We have mentioned the Georgia cases allowing actions for the invasion of the privacy of the home or its equivalent in footnote 3, supra. In each of these cases the plaintiff was actually present when the invasion took place.[5]

In *Pavesich*, supra, at (5), it was said that it was the right "to be let alone." One of the divisions established by the case law and recognized by the authorities is the right to be free from intrusion.[6] The Georgia cases allowing recovery rely in

---

[5]One incompletely reported criminal case upheld a conviction based on an indictment stating that the defendant "did unlawfully go upon the premises . . . *for the purpose* of spying upon or *invading the privacy* of" persons in the owner's house. *Terrell v. State*, 74 Ga. App. 222 (39 SE2d 456). (Emphasis added). It does not appear that anyone was actually home at the time. *Code* § 26-2002 defines a "Peeping Tom"; *inter alia*, as one who commits various acts "tending to invade the privacy" of those occupying the premises. While it is alleged that one of the defendants looked through the window, this point is not pursued. The reader is referred to Prewett, The Crimination of Peeping Toms and Other Men of Vision, 5 Ark. L.R. 388 (1951).

[6]From Prosser, Privacy, 48 Calif. L.R. 383, 389 (1960), where

part on a rationale based on the constitutional provision that "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . ." Const. of Ga., Art. I, Sec. I, Par. XVI (*Code Ann.* § 2-116). Illustrative of this approach is *McDaniel v. Atlanta Coca-Cola Bottling Co.*, 60 Ga. App. 92, 102, supra, where Judge Sutton said: "Publication or commercialization may aggravate, but the individual's right to privacy is invaded and violated nevertheless in the original act of intrusion."[7] Here there was an intrusion under aggravating circumstances that were certainly calculated to be a gross affront to the ordinary citizen.[8] If a man's home truly be his castle

---

he also lists three other torts included in the right. *Accord:* 1 Harper & James, Law of Torts § 9.6 (1956). See, generally, Nizer, The Right of Privacy, 39 Mich. L.R. 526 (1941); 3 Pound, Jurisprudence § 83 (4), at p. 58 (1959).

[7]Prosser hypothesizes a supporting example (the defendant breaks into the plaintiff's home, steals his photograph, and publishes it with false statements about the plaintiff in his advertising) in which privacy rights are invaded four ways. Prosser, Privacy, 48 Calif. L.R., supra, at p. 408, n. 199. Cf. Metter v. Los Angeles Examiner, 35 Cal. App. 2d 304 (95 P2d 491), alleging several of these torts. The gist of privacy is the sense of seclusion, the wish to be obscure and alone, and it is a trespass to abuse these personal sensibilities. Hull v. Curtis Pub. Co., 182 Pa. Super. 86, supra. See, *Sheftall v. Zipperer*, 133 Ga. 488, supra; *Walker v. Whittle*, 83 Ga. App. 445, supra.

There may, of course, be instances when a trespass has been committed without giving rise to an action for invasion of privacy.

[8]"The principles laid down in this opinion affect the very essence of constitutional liberty and security. They reach farther than the concrete form of the case then before the court, with its adventitious circumstances; they apply to all invasions on the part of the government and its employes of the sanctity of a man's home and the privacies of life. It is not the breaking of his doors, and the rummaging of his drawers, that constitutes the essence of the offence; but it is the invasion of his indefeasible right of personal security, personal liberty and private property, where that right has never been forfeited by his conviction of some public offence,—it is the invasion of this sacred

and he is to have the seclusion of it that he has a right to expect, this protection is necessary.[9] "The exhibition of callousness or indifference, the offer of insult and indignity, can, of course, inflict no injury on the dead, but they can visit agony akin to torture on the living." Fitzsimmons v. Olinger Mortuary Assn., 91 Colo. 544, 549 (17 P2d 535).

It was not error to overrule the general or special demurrers to count 3.

*Judgment affirmed. Carlisle, P. J., Bell, Frankum, Hall and Russell, JJ., concur. Jordan, J., disqualified. Nichols, P. J., dissents in part. Felton, C. J., dissents.*

FELTON, Chief Judge, dissenting. ■ In order to see clearly the exact question for decision it is necessary to quote the allegations of the three counts of the petition bearing on the question, the allegations being the same in each count. They are: Paragraph 3—"On October 7, 1959, the defendant Ford Motor Company had in its employ a man named Seiver or Siever, his initials being 'T. E.' according to the best information available to the plaintiff, the exact spelling and initials of his name being known to the defendant Ford Motor Company, *whose duties included the investigation of thefts from his employer and the location and return to his employer of any missing property belonging to his employer"*; paragraph 4—"For all purposes material to this action the acts of the said Seiver or Siever were performed within the scope of his employment, as the agent and servant of the defendant Ford Motor Company and the acts alleged herein of the said employee are chargeable to the defendant corporation"; paragraph 5—"On the date of October 7, 1959, the defendants Cawthon and Banks acting in concert with and in company with said employee of the defendant cor-

---

right which underlies and constitutes the essence of Lord Camden's judgment. Breaking into a house and opening boxes and drawers are circumstances of aggravation. . ." Boyd v. U. S., 116 U. S. 616, 630 (6 SC 524, 29 LE 746).

[9]"One's home is his castle, and one's private life is a precious possession which cannot be wrested from him." Nizer, The Right of Privacy, A Half Century's Developments. 39 Mich. L. R. 526, 560.

poration, entered upon and into the premises and home of the plaintiff, at a time when the plaintiff and his family were away from home, *for the purpose of removing therefrom personal property belonging to the plaintiff.*" It seems to me that the majority opinion goes to considerable length to construe the petition in favor of the plaintiff on demurrer, which is a violation of the best known rule of construction of pleadings. The petition in this case simply contains a conflict in allegations which requires a construction against the plaintiff with the result that the petition should be construed to show on its face that the acts charged against Ford's employee were not within the scope of his employment. This result may not be what the plaintiff intended but this court cannot do anything about that. In the hundreds of cases which have been dismissed on general demurrer the plaintiffs intended to allege a cause of action, as the plaintiff did in this case. He meant to allege that the employee of Ford sought to recover property which he mistakenly thought was Ford's but that is not what he alleged. He alleged that the employee broke into the house *for the purpose of recovering the plaintiff's property* and taking this allegation as true he knew the property belonged to the plaintiff when he broke into the house. There is simply no way in which these allegations can be construed to mean what the majority says they *"inferentially"* allege. The Supreme Court made such a ruling in *Toler v. Goodin*, 200 Ga. 527, supra. That ruling was not the law then nor is it the law now. The *Toler* case cited no law which supported it and this particular ruling has not been followed by the Supreme Court, that I know of, since. The rule the Supreme Court had in mind was the one and the only one which gives any substance to an inferential allegation, and that is that if there are facts alleged, which have a *necessary and inevitable consequence* the facts will be deemed to have alleged the consequence even though the consequence is not specifically alleged. That rule does not fit this case. There is no rational way in which the cases cited by the majority (except the *Toler* case) can be construed as authority for the interpretation placed on the petition by the majority. I invite all to check each one. This case is even chained more strictly to the rule of construction

against the pleader because in this case there is a contradiction which cannot be dissolved by an unwarranted construction. The only way the contradiction can be removed is by the act of the pleader. I invite attention to the various decisions supporting the proposition that the general demurrers in this case should have been sustained. See the approximately 150 cases cited under the catchwords "Ambiguous pleadings" in the annotations to *Code* § 81-101, and the dissent in the *Toler* case, supra. Unless the ruling in the *Toler* case is erased it will be possible in future similar cases for trial courts and this court to circumvent the law as to the construction of pleadings on demurrer.

■ The demurrers do not raise the question whether damages for humiliation and embarrassment may be recovered in both the counts based on trespass and the one based on the violation of right of privacy. See *McKown v. Great A. & P. Tea Co.*, 99 Ga. App. 120, supra.

NICHOLS, Presiding Judge, dissenting in part. I concur in the judgment of affirmance as to the first two counts of the petition but not as to count 3. A petitioner is permitted to file in one action, in different counts, similar causes of action; or to base his single cause of action on different allegations of facts which caused his injury. *Daniels v. Bruce*, 102 Ga. App. 434 (116 SE2d 658), and cases cited. Under the majority opinion the third count of the petition is a separate cause of action although based on the exact same facts as the first count and presumably a verdict in the aggregate of the separate prayers of these counts would be authorized if each is treated as a separate cause of action. In *McKown v. Great A. & P. Tea Co.*, 99 Ga. App. 120, 124 (107 SE2d 883), it was pointed out, "Since all slander cases necessarily involve the right of privacy against slander, the right of privacy is involved but the gist of the action is still slander in such cases and not invasion of privacy." Such case is not in conflict with the holding of the Supreme Court in *Pavesich v. New England Life Ins. Co.*, 122 Ga. 190 (50 SE 68), for while that case involved a two-count petition it apparently contained a single prayer for damages and it was held that the libelous publication also invaded the plaintiff's right of privacy. It was not held that a separate action would lie for each tort or

■

34

that separate damages could be recovered for the libel and for the invasion of privacy arising from the libelous publication. Moreover, in that case the publication would have constituted an invasion of privacy even if not libelous.