No. 46,992

WILLIAM FROELICH, *Appellant*, v. BURNETA ADAIR, *Appellee*.

(516 P. 2d 993)

Opinion filed December 8, 1973.

*Jim Lawing*, of Jim Lawing, Chartered, of Wichita, argued the cause and was on the brief for the appellant.

*Larry D. Shoaf*, of McDonald, Tinker, Skaer, Quinn & Herrington, of Wichita, argued the cause, and *Norman I. Cooley*, of the same firm, was with him on the brief for the appellee.

*Robert W. Kaplan*, of Kaplan, McMillan and Anderson, of Wichita, was on the brief filed in behalf of Syd Werbin, *Amicus Curiae*.

The opinion of the court was delivered by

OWSLEY, J.: Plaintiff William Froelich appeals from judgment of the trial court denying him recovery for his mental suffering due to an alleged invasion of his privacy by defendant Burneta Adair.

Plaintiff's cause of action for invasion of privacy by intrusion arose sometime in October, 1969, while he was a patient at St. Francis Hospital in Wichita. Burneta Adair's former husband, Tom Hamilton, had previously sued her seeking to recover a million dollars for defamation because she had stated he was homosexual and William Froelich was his lover. Truth is a defense to an action for

defamation and Mrs. Adair was interested in obtaining evidence from William Froelich as to the truth of her statements. Syd Werbin, deputy sheriff and a friend of Mrs. Adair, informed her that Froelich had become ill and was at St. Francis Hospital. Mrs. Adair then became alarmed that he might not be able to testify in the defamation action. She had previously obtained hair from her former husband's bed and underclothing and had it analyzed, and she suggested in her conversation with Werbin it would be a good idea to get samples of Froelich's hair for analysis and comparison. Werbin paid a hospital orderly who obtained combings from Froelich's hairbrush and a discarded adhesive bandage to which Froelich's hair was attached. Werbin passed these on to Mrs. Adair and she had them analyzed. There was conflicting testimony as to whether she asked Werbin to obtain the hair samples or whether he did so of his own volition after their discussion. During a deposition session with Hamilton's attorneys, she let it be known she had the samples of Froelich's hair obtained from his hospital room. Although he had not been aware of the taking of his hair samples at the time they were taken, when he later learned of the intrusion he claimed he was emotionally upset over the alleged invasion of his privacy and brought suit against both Mrs. Adair and Syd Werbin (*Froelich v. Werbin,* 212 Kan. 119, 509 P. 2d 1118) in separate actions.

We have recognized invasion of the right of privacy as a tort upon which a cause of action may be based. (*Kunz v. Allen,* 102 Kan. 883, 172 Pac. 532; *Johnson v. Boeing Airplane Co.,* 175 Kan. 275, 262 P. 2d 808; *Munsell v. Ideal Food Stores,* 208 Kan. 909, 494 P. 2d 1063.) Discussion of the right of privacy is found in Prosser, Law of Torts, 4th Ed., Privacy, § 117, p. 802; 62 Am. Jur. 2d, Privacy, § 26, p. 718; American Law Institute, Restatement of the Law Second, Torts, Tentative Draft No. 13, § 652. These authorities point out invasion of the right of privacy comprises four distinct kinds of tort. Prosser points out they are tied together by a common name, but otherwise have almost nothing in common except each protects against interference with the right to be let alone. They are listed in the Restatement as:

"§ 652B. *INTRUSION UPON SECLUSION*

"One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another, or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable man." (p. 103.)

"§ 652C. *APPROPRIATION OF NAME OR LIKENESS*

"One who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of his privacy." (p. 108.)

"§ 652D. *PUBLICITY GIVEN TO PRIVATE LIFE*

"One who gives publicity to matters concerning the private life of another, of a kind highly offensive to a reasonable man, is subject to liability to the other for invasion of his privacy." (p. 113.)

"§ 652E. *PUBLICITY PLACING PERSON IN FALSE LIGHT*

"One who gives to another publicity which places him before the public in a false light of a kind highly offensive to a reasonable man, is subject to liability to the other for invasion of his privacy." (p. 120.)

We are concerned here with an action for invasion of privacy by intrusion upon seclusion. The foregoing authorities recognize such an action and each lists numerous citations of supporting cases. Although Kansas has recognized other actions for invasion of privacy, an action for intrusion upon seclusion is one of first impression in this state. We are impressed by the reasoning of the cases which sanction such a right. Our research discloses the weight of authority is in favor of such a right. We conclude invasion of privacy by intrusion upon seclusion should be recognized in this state.

The rules of civil procedure require that in all actions tried without a jury the judge shall find and, either orally or in writing, state the controlling facts. (K. S. A. 60-252 [a]; *Duffin v. Patrick,* 212 Kan. 772, 512 P. 2d 442.) The law relative to intrusion upon seclusion cannot be applied when the trial court fails to make findings of fact necessary to a determination of the issues. In view of this we must return the case to the trial court for a new trial. We do not believe it advisable to return the case for findings of fact based on the existing record since the judge who heard the case is no longer an active trial judge.

In announcing its judgment, the trial court remarked on the law applicable to this action. Although unnecessary to our ruling herein, we believe it important to review the trial court's conclusions of law in order to avoid initiating a new field of law in this state on a questionable foundation. The trial court first stated:

". . . Gathering evidence to defend one's self from a charge of slander in a substantial action has been excused and has been excepted from the privilege of privacy. . . ."

We construe this statement to mean if a matter is privileged there is no cause of action based on the manner in which the privileged matter was obtained. Conclusions of law based upon the immunities

of privileged communications are not relevant to charges of invasion of privacy by intrusion since intrusion does not require publication to be actionable. In *Dietemann v. Time, Inc.*, 449 F. 2d 245 (1971), the First Amendment privilege of news reporters was raised as a defense in an action for intrusion and the court said:

"As we previously observed, publication is not an essential element of plaintiff's cause of action. Moreover, it is not the foundation for the invocation of a privilege. Privilege concepts developed in defamation cases and to some extent in privacy actions in which publication is an essential component are not relevant in determining liability for intrusive conduct antedating publication. . . ." (pp. 249, 250.)

Invasion of privacy and defamation are separate and distinct torts even though they share some of the same elements and often arise out of the same acts. The first is a cause of action based upon injury to plaintiff's emotions and his mental suffering; the second is a remedy for injury to plaintiff's reputation. Invasion of privacy torts which require publication and defamation torts share the common defense of privileged communications which grant immunity to otherwise actionable publication. Judicial proceedings are absolutely privileged communications, and statements in the course of litigation otherwise constituting an action for slander, libel, or one of the invasion of privacy torts involving publication, are immune from such actions. They are privileged communications because of the overriding public interest in a free and independent court system. This absolute privilege extends immunity to parties to private litigation and to anything published in relation to a matter at issue in court, whether said in pleadings, affidavits, depositions or open court. (*Weil v. Lynds*, 105 Kan. 440, 185 Pac. 51.)

Since plaintiff's action is not based upon publication, the court's conclusion of excusable conduct based upon gathering privileged communications in connection with a judicial proceeding is not a defense to intrusion in this action.

In its remarks the trial court also stated the evidence did not show any malicious conduct on the part of the defendant toward the plaintiff. This implies that malice is a necessary element of this action. The precise motives for invasion of privacy are unimportant. Defendant's action, rather than precise motives accompanying the act or conduct, is the criterion of liability. (62 Am. Jur. 2d, Privacy, § 15, p. 698; 14 A. L. R. 2d 758.) Malice may become material on the issue of damages. (62 Am. Jur. 2d, Privacy, § 47, p. 752.) In

both instances, we conclude the trial court's statements as to the law applicable to an action for intrusion upon seclusion were erroneous.

In *Kunz,* supra, and *Johnson,* supra, we recognized a cause of action for appropriation without consent of a person's name and likeness for another person's benefit. Since each of the cases involved publication of the material appropriated they cannot be considered as authority for an action for intrusion which requires no publication. It cannot be argued from the language of these cases that a cause of action such as brought in this case is in any way prohibited. In *Munsell,* supra, we stated the right of privacy does not prohibit communication of a matter of a private nature when the publication is made under circumstances which would render it a privileged communication according to the law of libel and slander. We have no criticism of this statement when confined to actions which require publication; but we hasten to point out that the rule in *Munsell* is not applicable to an action when publication is not required as in the action prosecuted in this proceeding. As we have previously stated, in an action for intrusion appropriation of privileged matters is not a defense.

We are reversing this case and granting a new trial on the failure of the trial court to make findings of fact. Whether a cause of action under the law applicable to intrusion upon seclusion has been proven must await the determination of these facts. Our treatment of the law relative to this subject is confined to correcting the trial court's statements.

Reversed and remanded for a new trial.

FROMME, J., dissenting. The majority after recognizing and properly limiting an action for intrusion of seclusion fails to consider the limitation inherent in the action. The opinion goes off on a tangent to hold the trial court erred in two statements of law which justify a new trial. In my view the trial court merely held the plaintiff failed to establish his cause of action. The admitted facts of this case giving rise to the claim of intrusion of seclusion bring the case within the recognized limitation that no action exists unless the wrongful intrusion is such as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities. In ¶ 2 of the syllabus the court holds:

"One who intentionally intrudes, physically or otherwise, upon the solitude

or seclusion of another, or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, *if the intrusion would be highly offensive to a reasonable man.*" (Emphasis added.)

The last phrase of this syllabus delimits such an action. Intrusion of seclusion to be actionable must be highly offensive to a reasonable man. The common link uniting all of the cases which recognize the cause of action is the unwarranted, obtrusive and objectionable intrusion into the privacy of another. In this case the appellant admits (appellant's brief page 10) it is not the embarrassment potential of the information obtained, it is the intrusion itself which the court should analyze to see if one's seclusion has been intruded upon. The character of the intrusion should determine liability or non-liability. The degree of the mental anguish does not determine liability, only the amount of damages.

No court has said that every invasion of itself into another person's private quarters constitutes an actionable invasion of privacy. It is only when the invasion is so outrageous that the traditional remedies of trespass, nuisance, intentional inflictions of mental distress, etc., will not adequately compensate a plaintiff for the insult to his individual dignity that an invasion of privacy action will lie. The intrusion itself must be patently offensive before an invasion of privacy action will lie. The totality of the intruder's conduct must be extreme, intentional and outrageous; the conduct must be so offensive that it would cause mental harm or anguish in a person of ordinary sensibilities. An invasion of privacy action should not be utilized to avoid the more stringent requirements of other torts designated to compensate an individual for physical or mental injury.

Before analyzing the facts of this case in light of the above law, we will first investigate one case relied upon by the appellant to support his position. In *Ford Motor Company v. Williams,* 108 Ga. App. 21, 132 S. E. 2d 206, the court found that the breaking into plaintiff's house by the defendant's agents constituted an intrusion of seclusion even though plaintiff was not present when such intrusion occurred. However, the court was not recognizing an intrusion of seclusion solely, because of the break-in; it merely acknowledged that defendant's use of three marked police cars and a paddy wagon in front of plaintiff's friends and neighbors was so patently outrageous, that it constituted an affront to the plaintiff's dignity. The intrusion there was under such aggravating circum-

stances that it would constitute an intrusion of seclusion to any man of ordinary sensibilities.

Appellant himself asked the question in his brief, ". . . what kind of intrusion will outrage a person of ordinary sensibilities?" Although appellant correctly notes that malice is not an essential element of an action founded upon intrusion of seclusion, he still premises his cause of action upon appellee's alleged malicious intent to prove his alleged homosexual tendencies. Appellant has misconstrued the issue before this court. It is not whether the appellee's alleged motive is so reprehensible that it brands her actions an intrusion of seclusion; but rather it is whether the act itself (the removal of the hair from the brush and the tape) is so outrageous, regardless of appellee's motives, that it would cause emotional harm to a person of ordinary sensibilities. Every theft of personal property may be upsetting or annoying; but it does not automatically give rise to an invasion of privacy action.

The alleged invasion of the appellant's seclusion was not so callous or indifferent that it would outrage a reasonable man. Actually, the removal of the hair was performed in a very unobtrusive manner. The appellee's activities herein lack the callous and objectionable characteristics which were present in every other case cited by the parties herein which is concerned with an intrusion of seclusion.

Whether or not the appellant may have an action in trespass, defamation, intentional infliction of mental harm, or some other remedy is not the question here. It is the appellant's burden to prove all necessary elements of the theory before he will be granted recovery thereon. The admitted facts herein simply do not support appellant's theory of recovery.

In the present case what was it that was highly offensive to appellant? In appellant's brief the acts are characterized as follows:

"It later became clear how the hair was obtained from Mr. Froelich. It seems that Werbin [a friend of appellee] had tipped the orderly $5.00 to retrieve some hair from a hair brush which was in the plaintiff's hospital room, and from a bandaid which had apparently held an I.V. secure to his arm and which had ripped out a few hairs upon removal."

Considering the evidence in the light most favorable to the appellant the evidence is insufficient to establish a cause of action for intrusion of seclusion. The evidence was insufficient to establish

that such acts were extreme, outrageous or highly offensive to a reasonable person. Accordingly the case should be affirmed.

SCHROEDER, J., joins in the foregoing dissent.