424 So.2d 440 (1982)
Caroline Jeanette Brister, Wife of/and Anthony Herman GERARD, for Themselves and on Behalf of Their Minor Children Sharon, Douglas, Patrick, Paige, and Sandra
v.
The PARISH OF JEFFERSON, State of Louisiana; the Sheriff, Parish of Jefferson, State of Louisiana; Firemen's Fund Insurance Company, Their Insurer; Robert Kerry, and Deputy Sheriff Sergeant J. Koehler.
No. 5-145.
Court of Appeal of Louisiana, Fifth Circuit.
December 9, 1982.
Rehearing Denied January 17, 1983.
*442 Hugh G. Oliver, Westwego, for plaintiffs-appellants.
Cronvich, Wambsgans & Michalczyk, A. Wes Wambsgans, Metairie, Warren E. Mouledoux, Jr., Asst. Parish Atty., Gretna, Dillon & Cambre, Gerard M. Dillon, New Orleans, Ronald C. Davis, Asst. Atty. Gen., New Orleans, for defendants-appellees.
Before SAMUEL, KLIEBERT and GRISBAUM, JJ.
GRISBAUM, Judge.
This personal injury suit involves the alleged torts of false imprisonment, battery, and invasion of privacy. Plaintiffs, a husband and wife, individually and on behalf of their minor children bring suit to recover damages from a police officer, the Sheriff, Parish of Jefferson, a Jefferson Parish dog pound officer, the Parish of Jefferson, and its insurer for the alleged intentional torts of battery and false imprisonment and for an alleged illegal search of their home. Plaintiffs appeal from the trial court's dismissal of plaintiffs' cause against the dog pound officer and the Parish of Jefferson and its insurer after the close of plaintiffs' case and from the judgment against the plaintiffs and in favor of the defendants, the police officer and the Sheriff, Parish of Jefferson, rendered after trial on the merits. We affirm in part and reverse in part.
In February of 1978 plaintiffs, Anthony Gerald and his wife, owned a dog, Ding-aling. Jefferson Parish dog pound officer, Mr. Robert Kerry, had received numerous complaints from the neighbors that this animal was allowed to roam the streets of the neighborhood. Officer Kerry himself had observed the dog loose on more than one occasion. He also believed that the dog was unlicensed and unvaccinated. On February 23, 1978 defendant Kerry gave Mr. Gerald a citation for having an unlicensed, untagged, and unleashed dog. Several days later, on Sunday, February 26, 1978, Mr. Kerry testified that as he was checking the neighborhood for roaming animals, he again observed plaintiffs' dog loose and stopped by plaintiffs' home at approximately 8 a.m. to check whether plaintiffs had obtained the correct papers on the dog. The following episode ensued. Defendant Kerry was met by one of the Gerald children who asked him to return later because his parents were not awake. Because he was given what he felt to be unresponsive and evasive answers to his request to see the dog's vaccination papers, Kerry called the Jefferson Parish Sheriff's Office for assistance. Defendant Sergeant Koehler responded.
Both Koehler and Kerry went to the Gerald home. According to Koehler and Kerry, when Mr. Gerald came to the door he began yelling at them. Sergeant Koehler testified that he explained the Jefferson Parish Animal Control Ordinance (No. 12146)[1] to Mr. Gerald; however, Mr. Gerald insisted that *443 the dog was not in his possession and that his father-in-law was having her vaccinated. At trial Mr. Gerald testified that he lied about Ding-a-ling and that the dog was actually hidden in the bathroom. Mr. Gerald was advised that if he did not produce the dog or his papers of vaccination, Sergeant Koehler would arrest him. A heated argument followed.
The parties have somewhat different versions of what transpired, but the essential events are agreed upon by all parties. Sergeant Koehler told Mr. Gerald he was under arrest and attempted to effectuate the arrest by taking Gerald's arm. According to Kerry, Mr. Gerald pushed Sergeant Koehler away and attempted to slam the door on Sergeant Koehler. Koehler persisted in his efforts to take Mr. Gerald into custody by grabbing his waistband, but Mr. Gerald retreated into his house with Koehler holding on to his waistband. Again, Sergeant Koehler told Gerald he was under arrest and attempted to lead him back to the front door, but Gerald brushed his hand off of his pants. Sergeant Koehler attempted several times to use his PR24 stick to place Mr. Gerald's arm behind his back. However, due to Mr. Gerald's size and strength, Koehler was not able to gain control of Gerald using this method. The officer attempted again to grab Mr. Gerald's waistband, but the waistband broke, and Gerald's pants fell. Sergeant Koehler testified that Mr. Gerald reached down to pick up his pants and arose threateningly. Fearful that Mr. Gerald would strike him, Sergeant Koehler struck Mr. Gerald once with the PR24 stick. Sergeant Koehler also testified that he struck Mrs. Gerald inadvertently in the stomach as she was holding his arm. Again the police officer tried to lead Mr. Gerald to the front door but was unable to do so. Due to his inability to control Gerald, Sergeant Koehler left the Gerald home and called for additional police assistance.
Mr. Gerald's version of the episode is that as soon as he came to the door Sergeant Koehler started arguing with him. According to Gerald, Sergeant Koehler asked him where the dog was and stepped across the threshold. Immediately, Gerald asked, "What are you doing?" When Gerald asked if he was being arrested because the dog was not there, Gerald was told that he was under arrest. Gerald's reply was that the officer could not arrest him because he had no warrant. When he moved away from the police officer, the officer followed him into the house. At the hallway Sergeant Koehler grabbed his pants; the catch broke, and as he reached down to pick them up, Officer Koehler struck him across the head with a billy club. Gerald and his wife, as well as two of his children, testified that Sergeant Koehler then turned and poked Mrs. Gerald in the stomach and ran out the front door.
Gerald testified that when he did not come out when ordered out of the house over a loudspeaker, the police kicked his back door down and placed him and his wife under arrest. They were escorted out of the house and taken away. The dog catcher then entered the Gerald home, found Ding-a-ling near a laundry room, seized her in the presence of at least one of the Gerald children, and brought her to the animal control center.
ISSUES
The issues are as follows:
1) Whether plaintiffs, husband and wife, are entitled to damages for the intentional tort of false imprisonment?
2) Whether plaintiffs, husband and wife, are entitled to damages for the intentional tort of battery?
3) Whether plaintiffs are entitled to damages for invasion of privacy?
FALSE ARREST AND IMPRISONMENT
False arrest and imprisonment occur when one arrests and restrains another against his will without color of legal authority. Kyle v. City of New Orleans, 353 So.2d 969, 971 (La.1977); Barfield v. Marron, 222 La. 210, 62 So.2d 276, 280 (1952). If a police officer acts pursuant to statutory authority in arresting and incarcerating a citizen, he is not liable for damages for false arrest and imprisonment. Kyle, supra. *444 Under Louisiana Code of Criminal Procedure article 213(3), a peace officer may arrest a person without a warrant, when the officer has "reasonable cause to believe that the person to be arrested has committed an offense, although not in the presence of the officer...." This article provides statutory authority for the arrest in this case.[2] The reasonable cause required in article 213(3) exists when the facts and circumstances within the arresting officer's knowledge and of which he has reasonable and trustworthy information are sufficient to justify a man of average caution in belief that the person to be arrested has committed or is committing an offense. See State v. Davis, 407 So.2d 666, 668 (La. 1981); State v. Elliot, 407 So.2d 659, 661 (La.1981).
In this case the dog catcher asked the police officer to assist him in enforcing an animal control ordinance. The dog catcher explained he had been to the plaintiffs' home on two occasions and had warned them that a vaccination certificate for the dog had to be produced. He told the officer that he had been to the home only fifteen minutes before and had seen the dog at the house. The police officer, therefore, had reasonable cause to believe that plaintiffs had violated Jefferson Parish Ordinance No. 12146 which requires, among other things, that one have a license and/or proof of vaccination of a dog. Since the police officer had authority for the arrest under Criminal Code of Procedure article 213(3), plaintiffs cannot recover damages for false arrest and imprisonment.

BATTERY
Also to be considered is whether plaintiffs, the husband and wife, can recover for batteries inflicted upon them by the police officer. A lawful arrest is a defense to the intentional tort of battery when reasonable force is used to effect such an arrest. See Kyle, 353 So.2d 969, 972.[3] However, if an officer uses unreasonable or excessive force, he and his employer are liable for any injuries which result. La.C.C. art. 2320; Kyle, 353 So.2d 969, 972; Picou v. Terrebonne Parish Sheriff's Office, 343 So.2d 306, 308 (La.App. 1st Cir.1977); Taylor v. City of Baton Rouge, 233 So.2d 325, 330 (La.App. 1st Cir. 1970). We must evaluate this officer's actions against the standard of an ordinary, prudent, and reasonable man placed in the same position and with the same knowledge as this officer. Kyle, 353 So.2d 969, 973; Picou, supra. Since the degree of force employed is a factual issue the trial court's finding is entitled to great weight. Kyle, supra; Canter v. Koehring Co., 283 So.2d 716, 724 (La. 1973); Picou, 343 So.2d 306, 309. Kyle sets forth several factors to be considered in making this determination of reasonableness such as the known character of the arrestee, the risk and dangers faced by the officer, and the nature of the offense involved, the chance of the arrestee's escape if the particular means are not employed, the existence of alternative methods of arrest, the physical size, strength, and weaponry of the officer as compared to the arrestee, and the exigencies of the moment. Kyle, supra.
The facts and circumstances of this case support the trial court's finding that the defendant police officer acted reasonably. The record reflects that Mr. Gerald was upset when he came to the door. He responded to Officer Koehler's questions in a belligerent manner and often with evasive answers. When Koehler placed Mr. *445 Gerald under arrest, Gerald resisted and retreated inside his home. Due to Mr. Gerald's size and strength, Koehler's several attempts to effectuate his arrest were of no avail. Officer Koehler testified that he struck Mr. Gerald with the PR24 when Gerald made a fist. Koehler stated that he felt Gerald would strike him. Moreover, Officer Koehler hit Mr. Gerald only once which Koehler stated had little effect upon Gerald; Gerald did not go to his knees nor did he surrender to the officer but continued to resist the officer. This plaintiff's general demeanor, the fact that he weighed over three hundred pounds, combined with the fact that he seemed to be ready to strike this officer, indicate that the officer's one blow to plaintiff Anthony Gerald was not unreasonable. We also accept, as did the trial court, Officer Koehler's version of the episode that in attempting to dislodge Mrs. Gerald's hold on his arm he accidently hit her in the stomach. Canter, supra. Under the facts, the police officer made a lawful arrest and used reasonable force in order to effect the arrest and to overcome plaintiff's resistance.

INVASION OF PRIVACY
Louisiana recognizes tort recovery for invasion of privacy.[4] The right to privacy includes the right to be free from unwarranted intrusion into one's own quarters.[5]Parish National Bank, 397 So.2d 1282, 1286. In Louisiana in order to recover for an invasion of privacy, plaintiffs must show they have an "actionable" claim not merely an "actual" claim. Parish National Bank, 397 So.2d 1282, 1286; Jaubert, 375 So.2d 1386, 1389; Love, 263 So.2d 460, 464-66; Hamilton, 82 So.2d 61, 70. An invasion of privacy is "actionable" when the defendant's conduct is unreasonable and seriously interferes with the plaintiff's privacy interest. To determine the reasonableness of the defendant's conduct, this court must balance defendant's interest in pursuing his course of conduct against plaintiff's interest in protecting his privacy. Parish National Bank, supra; Jaubert, supra. "Where a defendant's action is properly authorized or justified by circumstance, it may be found reasonable and nonactionable even though it amounts to a slight invasion of the plaintiff's privacy." Parish National Bank, supra.
Applying the above principles, we find that plaintiffs do not have an actionable claim for invasion of privacy against the police officer and his employer; however, plaintiffs do have an actionable claim against the dog pound officer and his employer.[6] As noted above, the police officer was authorized under La.C.Cr.P. art. 213(3) to arrest the husband and wife; his actions were reasonable under the circumstances and, therefore, nonactionable. However, the dog pound officer had no authority under the Parish Animal Control Statute[7] or any other Louisiana statutes or jurisprudence to enter the home and seize an unlicensed animal. Under the circumstances his actions were not justified. The dog had not bitten anyone nor does the record indicate that the dog was reported as a dangerous or vicious animal. Importantly, at least one of the Gerald children still remained in the home and was present when the officer *446 seized the dog. Considering the specific procedures set forth in the Jefferson Parish Animal Control Ordinance for violation of its provisions, we cannot say the officer was justified in entering the home.[8] When we weigh the importance of the privacy of one's home, against the Parish's interest in having animals properly licensed and leashed when upon public streets, we conclude that the dog pound officer's actions in entering the home to seize the animal were unreasonable.
Plaintiffs allege in their petition for damages that the dog pound officer's actions caused psychic injuries to themselves and their children. They also claim entry into their home without a warrant as an injury in itself as well as damages for humiliation, mental anguish, and extreme mental suffering. The plaintiffs inadequately addressed the issues of psychological injuries at the trial court level. Consequently, the trial court granted a motion to dismiss the plaintiffs' case as to the dog officer and his employer on the grounds that no damages were proven with regards to this defendant's actions. While we agree with the trial court that the plaintiffs presented no evidence of the children's psychological injuries, we do find plaintiffs have shown they were injured by the physical intrusion into their home by the dog catcher.[9] Throughout the proceedings, there is testimony evidencing the Geralds' desire to protect the sanctity of their home. Mr. and Mrs. Gerald made several strenuous objections to the presence of outsiders in their home without a warrant before they were arrested. We conclude that plaintiffs have shown an actionable claim for invasion of privacy against the dog pound officer and his employer and award them $1000.00 under our authority provided in La.C.C.P. art. 2164. We reverse the lower court's dismissal of plaintiffs' claim against the dog pound officer and his employer, the Parish of Jefferson, and award $1000.00 damages for invasion of privacy to plaintiffs against Robert Kerry, the Parish of Jefferson, and its insurer, Firemen's Fund Insurance Company.
For the above reasons, we affirm that part of the trial court's judgment which finds in favor of defendants, Deputy Sheriff Sergeant J. Koehler, and the Sheriff, Parish of Jefferson, and against plaintiffs. We reverse that part of the trial court's judgment which dismisses plaintiffs' claim against Robert Kerry and the Parish of Jefferson and its insurer, Firemen's Fund Insurance Company, and it is now ordered that there be judgment against those defendants, in solido, and in favor of the plaintiffs in the full sum of $1000.00.
AFFIRMED IN PART AND REVERSED IN PART.
NOTES
[1] Several of Jefferson Parish's Animal Control Ordinance's pertinent provisions are:

"Sec. 4-17(c) Dogs at large; violation notices. No dog shall be permitted to run or be upon any street, alleyway, highway, common or public square unless under the immediate control of a competent person and restrained by a substantial chain or leash not exceeding six (6) feet in length ....
Sec. 4-13(a) Registrations, tags and vaccination. It shall be the duty of the owner or keeper of every dog or cat over four (4) months old to register same with the department by purchase of a dog or cat license. Such license shall be dated and indicate the number of the license tag issued for the dog or cat at the time it is vaccinated by a licensed veterinarian or licensed veterinary technologist with appropriate anti-rabies vaccine at the owner's expense ....
Sec. 4-16(c) Public nuisance. Every owner or keeper of animals shall exercise proper care and control of such animals so as to prevent them from creating or becoming a public nuisance. Excessive or untimely barking, howling or yelping so as to disturb the peace and quiet of a neighborhood or its residents or to disturb the health or repose of the residents; attacking or molesting passersby or other animals; being repeatedly at large; ... all shall be deemed to be the creation of a public nuisance and the owner or keeper of an animal causing such public nuisance shall be guilty of a misdemeanor and subject to the penalties of section 4-25 of this article."
[2] Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) and State v. Brown, 387 So.2d 567 (La.1980) prohibit a warrantless, non-exigent arrest in the home. However, State v. Pittman, 397 So.2d 1297, 1298 (La.1981) held that the Payton rule is not retroactive. The arrest in this case occurred February 26, 1978; Payton and Brown were decided in 1980.
[3] Code of Criminal Procedure art. 220 authorizes the use of "reasonable" force in making arrests; it provides:

"A person shall submit peaceably to a lawful arrest. The person making a lawful arrest may use reasonable force to effect the arrest and detention, and also to overcome any resistance or threatened resistnance of the person being arrested or detained." (Emphasis added)
[4] See, e.g., Parish National Bank v. C.E. Lane, 397 So.2d 1282, 1285-86 (La.1981); Jaubert v. Crowley Post-Singal, Inc., 375 So.2d 1386, 1388-89 (La.1979); Lucas v. Ludwig, 313 So.2d 12, 14-15 (La.App. 4th Cir.1975); Love v. Southern Bell Telephone and Telegraph Co., 263 So.2d 460, 464-66 (La.App. 1st Cir.1972); Hamilton v. Lumbermen's Mutual Casualty Co., 82 So.2d 61, 63-64 (La.App. 1st Cir.1955).
[5] Other forms of invasion of privacy recognized in Louisiana include the appropriation of an individual's name or likeness for the use or benefit of the defendant, publicity which unreasonably places the plaintiff in a false light before the public, and the unreasonable public disclosure of embarrassing private facts. Jaubert, 375 So.2d 1386, 1388.
[6] La.C.C. art. 2320.
[7] Although the Parish claims Section 4-21 provides authority for an authorized employee of the animal shelter department to enter a premises to take possession of and remove animals kept in violation of the provisions of the Parish Code, this article provides removal of "abandoned" or "neglected" animals from buildings or premises.
[8] Section 4-12(c) authorizes the Animal Shelter Advisory Board to constitute a committee of three or more members to hear all complaints involving violations of the provisions of the statute. For example, this committee hears complaints under Section 4-16(c) pertaining to animals considered to be a public nuisance because repeatedly found to be at large. It requires notice to the defendant of a hearing and a right to be represented by counsel. Also to be noted, Section 4-17(c) authorizes the seizure of dogs found at large.
[9] See, Ford Motor Company v. Williams, 108 Ga.App. 21, 132 S.E.2d 206, 211-12 (1963), revd on other grounds 219 Ga. 505, 134 S.E.2d 32 (1963), where an intrusion of privacy was found even though plaintiff was not present at the time of the entry into his home.