343 So.2d 306 (1977)
Willis A. PICOU
v.
TERREBONNE PARISH SHERIFF'S OFFICE, Through its Sheriff, Charlton P. ROZANDS.
No. 11106.
Court of Appeal of Louisiana, First Circuit.
February 14, 1977.
Rehearing Denied March 21, 1977.
Writ Refused May 11, 1977.
*307 Duval, Arceneaux, Lewis & Funderburk by Stanwood R. Duval, Jr., Houma, for plaintiff and appellant.
Durrett, Hardin, Hunter, Dameron & Fritchie by L. Michael Cooper, Baton Rouge, for defendant and appellee.
Before LANDRY, C.J., and COLE and CLAIBORNE, JJ.
COLE, Judge.
Plaintiff, Willis A. Picou, appeals a judgment of the trial court rejecting his claim of damages arising from the alleged use of excessive force by defendants' employee, R. O. Carpenter. Defendants-appellees in this suit are the Terrebonne Parish Sheriff's Office and Charlton P. Rozands, Sheriff. However, as admitted by counsel for appellant in argument before this Court, the proper party defendant is the Sheriff himself, his office being only titularly involved.
The issue presented by this appeal is as follows: Did Sheriff's Deputy, R. O. Carpenter, in the performance of his duties, use unreasonable and excessive force upon the plaintiff, thereby making his employer liable to the plaintiff for the damages which resulted?
The record discloses that on March 31, 1974, plaintiff had been engaged in a card game at the Brown Derby Bar beginning at approximately 2:00 A.M. At approximately 9:00 A.M. on the same morning, Mrs. Kermit Muse (known at that time as Lea Porter) entered the bar where the plantiff had been playing cards. Mrs. Muse's expressed reason for being there was to locate a former boyfriend who allegedly had her car. Plaintiff and Mrs. Muse and after several drinks agreend to chauffeur her in an attempt to locate her automobile. During the entire day of Sunday, March 31,1974, the plaintiff and Mrs. Muse visited numerous bars and drove past several more, during which period they had by their own admission a substantial amount to drink and nothing to eat. At approximately 8:00 P.M. the pair arrived at the Roadrunner Inn.
After getting to the Roadrunner, Mrs. Muse returned to her apartment and put a loaded gun in her purse. Her roommate, Cheryl Robichaux (then Vannerson), attempted to dissuade her from taking the gun. Mrs. Robichaux was concerned because of the what she perceived to be Mrs. Muse's depressed and intoxicated condition at the time. Being unsuccessful, Mrs. Robichaux went to the Roadrunner Inn, arriving there before Mrs. Muse, and warned Mrs. Gladys Mitchell, the manager of the bar, that Mrs. Muse was coming with the gun. Consequently, Mrs. Mitchell called the Sheriff's Department in order to prevent any trouble.
While at the Roadrunner Inn, plaintiff was sitting at a table taking to several people, including Gladys Mitchell. Plaintiff did not notice that Mrs. Muse had left. He first learned of her departure when he received a telephone call from her asking him if he would pay for a cab for her to return to the bar. Subsequently, Mrs. Mitchell *308 informed him that Mrs. Muse's roommate had said that Mrs. Muse was returning with a gun. Mrs. Mitchell then told a friend sitting at the same table with the plaintiff that she ought to leave because there might be trouble. As the group at the table disbanded, plaintiff went to the bar and sat on a stool beside Mrs. Robichaux, whom he had met during the day in his exploits with Mrs. Muse.
Two Sheriff's Deputies arrived at the Roadrunner in response to Mrs. Mitchell's request and were greeted by her outside. She informed them of the situation. One deputy, Eugene Callahan, Jr., was uniformed; the other deputy, R. O. Carpenter, was bearded and dressed in khaki pants and a sweat shirt. Mrs. Muse arrived shortly thereafter by cab. As she approached the entrance to the bar, Deputy Callahan asked to see her purse. She responded with obscenities and ran past him into the bar. The two deputies and Mrs. Mitchell followed her to the bar. As Mrs. Muse entered the bar, plaintiff gave her his seat and moved to her left. Deputy Callahan again approached Mrs. Muse requesting to see her purse. At this time an intoxicated patron distracted Deputy Callahan in an apparent effort to interfere. Mrs. Muse and Mrs. Robichaux then engaged in a scuffle over the purse, pulling it back and forth between them. The plain clothed deputy, R. O. Carpenter, who was standing behind the two women, reached in and grabbed the purse, simultaneously flashing his badge. Mrs. Muse was placed under arrest for carrying a concealed weapon and escorted from the bar bodily by Carpenter and Callahan, because she refused to leave voluntarily. During her arrest Mrs. Muse struggled and resisted, while shouting antagonistic, inciteful, and obscene remarks to the crowd. Although plaintiff was standing next to Mrs. Muse during all of this commotion in the bar, he claims that he saw nothing because he was ordering a drink.
The deputies took Mrs. Muse outside and leaned her over the car in order to restrain her so that they might put handcuffs on her. The plaintiff then went outside and saw Mrs. Muse and Carpenter struggling over the car. Plaintiff's testimony is unclear as to whether he also saw a uniformed deputy at this time. The major factual dispute in this suit concerns the subsequent conduct of the plaintiff. The plaintiff claims he merely approached Carpenter and said, "You don't have to hurt her," and that Carpenter grabbed him and ran him into the brick wall of the bar. However, by plaintiff's own admission, Carpenter never struck or kicked him at any time. Carpenter and Callahan claim, on the other hand, that the plaintiff jumped on Carpenter's back, was pushed away, and then jumped on Carpenter's back again. At this point, Carpenter claims he struggled with plaintiff, finally grabbing him by the back of the pants and shirt and shoving him against the door. He claims that he then wrestled plaintiff to the ground, at which point Callahan sprayed him with Mace to stop his continued resistance.
The use of force when necessary to effect an arrest is a legitimate police function, whether such force is directed against the person arrested or one interfering with the arrest. See Castriotta v. Cronvich, 277 So.2d 744 (La.App. 4th Cir. 1973); Taylor v. City of Baton Rouge, 233 So.2d 325, at 330 (La.App. 1st Cir. 1970). However, the use of unreasonable or excessive force renders the officer and his employer liable for injuries which may result. See Cheatham v. Lee, 277 So.2d 513 (La.App. 1st Cir. 1973); and Taylor v. City of Baton Rouge, supra.
The unreasonableness or excessiveness of the force used, as in all cases of battery, is dependent upon the totality of the facts and circumstances in the particular case. The reasonableness of the force exerted must be evaluated from the viewpoint of a reasonable man in the position of the officers at the time of the incident. We note in this connection the highly charged and volatile nature of the incident. The arrested patron had a loaded gun in her purse. She was highly intoxicated and violently resisted her arrest. At least one other bar patron had previously tried to interfere with the uniformed deputy in the *309 bar. The deputies were called to the situation by the distressed bar manager, upon information received from Mrs. Muse's distraught roommate.
It would serve no useful purpose to discuss the testimony of the various parties in an attempt to reconcile the conflicting versions of the events. The determination of the facts in this case rests upon an evaluation of the credibility of the witnesses. Working against the plaintiff's credibility is not only his intoxicated state at the time of the incident, but also numerous convictions over a long period of time for disorderly conduct arising from barroom incidents. The trial judge obviously accepted the defendants' version of the events and, therefore, determined that the use of force was justified and not excessive. After a careful review of the record, we do not find that this result was manifestly erroneous.
In asserting that the force used by the officers was unreasonable and excessive, plaintiff relies primarily upon the seriousness of the resulting injury. The plaintiff suffered from three bulging discus in the cervical region, requiring surgery to remove the discs and fuse the spine. While the nature of the injury has relevance to the factual question of the amount of force exerted, it is not determinative of the question of whether under the circumstances the force used was reasonable or excessive and, therefore, tortious. Further, the injury does not even prove that a significant amount of force was exerted against the plaintiff. For example, in this case it is clear from the medical evidence that plaintiff's neck problem pre-existed the trauma and was a degenerative condition. The incident in question merely aggravated the pre-existing condition.
While a tortfeasor will be liable for all of the direct result of his tortious act, including aggravation of pre-existing conditions, the nature of the injury does not determine that the act of the defendant is, in fact, tortious. In this case the seriousness of the injury resulted not only from the force exerted but from the pre-existing condition. Therefore, it does not support the contention that excessive force was necessarily used. Reasonable force may result in serious injuries in situations where the circumstances require that great amounts of force be exerted or in situations where the plaintiff's pre-existing condition makes him especially susceptible to injuries.
Plaintiff also relies on the great disparity in size between him and the defendant officer to prove that the force used was excessive. Size differential is a factor in determining whether the force exerted was more than was reasonably necessary. Yet, it is only one factor to be considered in light of all of the circumstances as viewed from the officer's perspective in determining how much force is reasonable and necessary. Examples of other factors of importance to be noted are the state of mind of the assailant, the surrounding atmosphere at the scene, the seriousness of the consequences should the officer be unsuccessful in restraining the assailant, and the possibility of interference from others. The record discloses that a crowd had gathered at the scene, another party had attempted to interfere, the parties involved were intoxicated, and a loaded gun was involved.
Plaintiff also places emphasis on the contention that he never saw the uniformed deputy, that Carpenter never identified himself to plaintiff as a deputy, and that he did not know Mrs. Muse was being arrested. Not only is testimony to this effect suspect considering all of the evidence, but under the facts and circumstances of this case Deputy Carpenter owed no duty to plaintiff to identify himself. It was self-evident to even the most casual observer that he was helping a uniformed officer effect an arrest. The reasonableness of an officer's conduct is not measured from the viewpoint of the victim but from that of a reasonable man in the officer's position.
For the foregoing reasons, we affirm the judgment of the trial court. The costs of these proceedings are assessed to the plaintiff-appellant.
AFFIRMED.