HIGGINBOTHAM, J.
| ¡¡Plaintiff, William P. Marcaurele, appeals the trial court’s grant of summary judgment in favor of defendants, the City/Parish of East Baton Rouge, Officer Kelly Cullen, Officer Joshua Kirst, and Officer Michael Edwards, finding no genuine issue of material fact remained regarding whether the police officers’ use of force after a high speed chase was reasonable under the totality of the circumstances.
FACTS AND PROCEDURAL HISTORY
On November 29, 2007, around 12:15 a.m., Baton Rouge Police Officer, Kerry Cullen, observed a Dodge truck with a headlight out. Officer Cullen activated his emergency lights and proceeded to stop the truck. William Marcaurele, who was driving the truck, appeared to slow down as if to stop, but then fled from Officer Cullen at a high rate of speed. Thereafter, Officer Cullen pursued him, and Mr. Mar-caurele attempted to elude Officer Cullen. During Officer Cullen’s pursuit, Officer Iv-erson also began pursuing Mr. Marcaurele, and as Mr. Marcaurele made a turn, became the first police unit behind Mr. Mar-caurele. After a high-speed chase that traveled through several streets and lasted several minutes, Mr. Marcaurele turned into a residential area.
At a house on North Chalfont, Mr. Mar-caurele crashed his truck into Officer Iver-son’s police unit and then drove into the backyard of the residence. Officer Cullen and Officers Edwards and Kirst, who had also joined in the pursuit, exited their police units and entered the residence’s backyard to look for him. Mr. Marcaurele, at that moment turned his vehicle Around, rammed through fences and crashed into the house. Next, Mr. Marcaurele backed up, revved his engine and drove in the direction of the officers. Officers Cullen and Kirst repeatedly yelled for Mr. Mar-caurele to stop- the truck. As the truck headed directly in the direction of the officers, Officer Cullen, Officer Edwards, and Officer Kirst fired shots in the direction of the truck and Mr. Marcaurele. Mr. Mar-caurele was shot six times. He was treated for his injuries by EMS, and then transported to a local hospital. ^Subsequently, in a criminal proceeding, Mr. Marcaurele pled guilty to aggravated criminal damage to property.
On November 25, 2008, Mr. Marcaurele commenced proceedings for personal injury damages against the City/Parish of East Baton Rouge, Officer Cullen, Officer Kirst, and Officer Edwards alleging that the officers had used unreasonable and excessive force.[1]' The defendants filed a motion for summary judgment seeking dismissal of Mr. Marcaurele’s claims on the grounds that Mr. Marcaurele failed to come forth with any evidence that the force used by the officers was unreasonable. After a hearing, the trial court signed a judgment granting defendants’ motion for summary judgment and dismissing Mr. Marcaurele’s claims against defendants with prejudice. It is from this judgment that Mr. Marcaurele now appeals, assigning error to the trial court’s grant of summary judgment in favor of Mr. Marcaurele, contending that genuine issues of material fact remain.
*971 APPLICABLE LAW
On appeal, summary judgments are reviewed de novo under the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate. Sunrise Const. and Development Corp. v. Coast Waterworks, Inc., 2000-0303 (La.App. 1 Cir. 6/22/01), 806 So.2d 1, 3, writ denied, 2001-2577 (La. 1/11/02), 807 So.2d 235. Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions, together with any affidavits, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. Code Civ. P. art. 966(B)(2).[2] The initial burden of proof is on the moving party; however, if the moving party will not bear the burden) 4 of proof at trial, the moving party’s burden on the motion is satisfied by pointing out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim. Thereafter, the nonmoving party must produce factual support sufficient to establish that she will be able to satisfy her evidentiary burden of proof at trial; failure to do so shows that there is no genuine issue of material fact and the motion should be granted. La. Code Civ. P. art. 966(C)(2).
A genuine issue is a triable" issue; In determining whether an issue is genuine, courts cannot consider the merits, make credibility determinations, evaluate testimony, or weigh evidence. Smith v. Our Lady of the Lake Hosp., Inc., 93-2512 (La. 7/5/94), 639 So.2d 730, 751. A fact is material when its existence or nonexistence may be essential to the plaintiffs cause of action under the applicable theory of recovery. Id. Facts are material if they potentially insure or preclude recovery, affect a litigant’s ultimate success, or determine the outcome of the legal dispute. King v. Illinois Nat. Ins. Co., 2008-1491 (La. 4/3/09), 9 So.3d 780, 784. Because it is the applicable substantive law that determines materiality, whether or not a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Manno v. Gutierrez, 2005-0476 (La.App. 1 Cir. 3/29/06), 934 So.2d 112, 116.
' [7] The applicable substantive law was explained in Kyle v. City of New Orleans, 353 So.2d 969, 972 (1977) and La. Code Crim. P. art. 220. Article 220 provides “A person shall submit peaceably to a lawful arrest. The person making a lawful arrest may use reasonable force to effect the arrest and detention, and also to overcome any resistance or threatened resistance of the person being arrested or detained.” The use of force by law enforcement officers must be tested by the reasonable force standard established by this article. The test precludes clearly inappropriate force. La. Code Crim. P. art. 220. Official Revision Comment (b). The use of. force when necessary to make an arrest is a legitimate police function. But if the officers use unreasonable or excessive force, they and their employer are!,- liable for any injuries which result. See La. Civ. Code art. 2320; Picou v. Terrebonne Parish Sheriffs Office Through Rozands, 343 So.2d 306, 308 (La. App. 1st Cir.) writ denied, 345 So.2d 506 (La. 1977).
Whether the force used is reasonable depends on the totality of the facts and circumstances in each case. A court *972 must evaluate the officer’s actions against those of ordinary, prudent, and reasonable men placed in the same positions as the officers and with the same knowledge as the officers. See Picou, 343 So.2d at 308. Several factors to be considered in making this determination are: the known character of the arrestee; the risks and dangers faced by the officers; the nature of the offense involved; the chance of the arres-tee’s escape if the particular means are not employed; the existence of alternative methods of arrest; the physical size, strength, and weaponry of the officers as compared to the arrestee; and the exigencies of the moment. See Kyle, 353 So.2d at 973.
DISCUSSION
In support of their motion for summary judgment, defendants submitted, the depositions of Officer Cullen, Officer Kirst, Officer Edwards, and Mr. Marcau-rele, as well as the transcripts of Mr. Marcaurele’s Boykin examination and sentencing hearing in the criminal proceeding.
In his deposition, Officer Cullen testified that shortly after midnight he attempted to pull Mr. Marcaurele over for having a headlight out. He said that Mr. Marcaurele started to pull over, but when he got close Mr. Marcaurele “gunned it,” beginning a high speed chase that traveled through several streets during which Mr. Marcau-rele was going on and off the roadway, almost hit a house, and struck several mailboxes. Officer Cullen described the scene at the house on North Chalfont where Mr. Marcaurele’s truck struck Officer Iverson’s police unit, Mr. Marcaurele drove into the backyard performed a “doughnut”, and then hit the house. Officer Cullen stated that he stepped outside of his police unit, drew his weapon, and yelled at Mr. Marcaurele to get out of the car. He said Mr. Marcaurele’s truck was stuck on thej6 house, but he backed up revving the engine and slinging dirt, before going forward and hitting a fence in front of him. Officer Cullen testified that Mr. Marcaurele “was coming dead at us” moving fast. At that point, Officer Cullen testified that he felt he had exhausted all options, and he began to fire his weapon at Mr. Marcaurele. Officer Cullen stated that he was backpedaling and moving to the right, and the truck was about ten feet away from him. He testified that he stopped firing as soon as he no longer worried about himself and his fellow officers getting run over.
Officer Kirst, in his deposition, testified that he joined the chase toward the end, where he saw Mr. Marcaurele strike the house, and the truck get stuck on the house, eventually get loose from the house, and then come toward him in the alleyway between the house he struck and a neighboring house. He testified that he perceived the truck was trying to run him down, and he was yelling at Mr. Marcau-rele to stop the car. He said that when the car was ten to fifteen feet away and coming in his direction he felt he was in danger and began to fire his weapon.
In his deposition, Officer Edwards testified that he felt Mr. Marcaurele turned his way intentionally, and he thought Mr. Marcaurele was going to run him over.” He said he opened fire when Mr. Marcau-rele was coming toward him at a high rate of speed.
Mr. Marcaurele pled guilty to aggravated criminal damage to property and during the Boykin examination he agreed to the factual bases for his plea. During the proceeding, Mr. Marcaurele’s actions wei’e described as follows: “[Mr. Marcaurele] almost struck several officers. And the officers, in the process, according to police officers, had to fire shots in order to prevent being run over by the accused.” *973 When given the chance to dispute that account, Mr. Marcaurele stated that he could not remember what happened so could not disagree with it. He agreed that if that is what the police officers say happened, then that is what happened.
In opposition to the motion for summary judgment, Mr. Marcaurele introduced the affidavit of Andrew J. Scott, III, who had thirty years of law|7 enforcement experience, including seven years as Chief of Police in the City of North Miami Beach. Mr. Scott concluded that in his opinion, the officers use of force was unreasonable, and that there was no evidence to confirm that Mr. Marcaurele turned his truck toward the officers. However, Mr. Scott also concluded that the “crime scene investigation regarding this shooting incident was incomplete which makes it very difficult, if impossible, to reconstruct the crime scene.”
The defendants presented evidence of a long and dangerous high-speed chase in which Mr. Marcaurele hit an officer’s police unit and a house, and broke through several fences. Each officer unequivocally testified that immediately before they discharged their weapons, Mr. Marcaurele was heading directly toward them at a high rate of speed, they felt they were in danger, and they felt that Mr. Marcau-rele’s intention was to run them over.
Mr. Scott’s affidavit, in which he admitted that he did not have enough information to recreate the crime scene, does not create a genuine issue of fact in light of the officers’ unequivocal testimony. Considering the totality of the circumstances and the risks and dangers faced by the officers, we find no genuine issue of material fact remains regarding whether then-use of force was reasonable.
CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this proceedings are assessed to Mr. Mar-caurele.
AFFIRMED.
THERIOT, J., agrees and assigns additional reasons.
Iil agree with the rationale and result reached by the majority. I write separately to add that the use of deadly force is reasonable to combat deadly force. There is no question of fact that the police officers in the instant matter were confronted with a deadly weapon once Mr. Marcaurele backed his truck from the house and proceeded toward the officers, who at that point in time were on foot.
When a suspect is fleeing and an officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not unreasonable to prevent escape by using deadly force. When considering the reasonableness of a police officer, one must take into account the fact that police officers are often forced to make split-second-judgment in circumstances that are tense, uncertain, and rapidly evolving. See Stroik v. Ponseti, 35 F.3d 155, 158 (5th Cir. 1994), cert. denied, 514 U.S. 1064, 115 S.Ct. 1692, 131 L.Ed.2d 556 (1995).
Under the circumstances of this case, I find a reasonable officer well could have feared for his safety and that of others nearby. Therefore, the officers were justified in using deadly force to defend themselves and others, and the officers were entitled to summary judgment as a matter of law.

. Mr. Marcaurele filed claims under 42 U.S.C. § 1983 and Louisiana state law. In a joint stipulation with the City/Parish,, all claims under 42 U.S.C. § 1983 were dismissed, leaving 'only the claims under Louisiana state law,

. Louisiana Code of Civil Procedure article 966 was amended and reenacted by Acts 2015, No. 422, § 1, with an effective date of January 1, 2016. The' amended version of article 966 does not apply to any motion for summary judgment pending adjudication or appeal on the effective date of the Act. Therefore, we refer to the former version of the article in this case. See Acts 2015, No. 422, §§ 2 and 3.