STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

* * * * * *

2019 CA 1389

BOBBY SIMMONS

VERSUS

ROY HUGHES, JEFFERY JACKSON AND THE CITY OF HOUMA

JUDGMENT RENDERED: __NOV 2 5 2020__

* * * * * * *

Appealed from the
Thirty-Second Judicial District Court
In and for the Parish of Terrebonne • State of Louisiana
Docket Number 158719 • Division "A"

The Honorable George J. Larke, Jr., Judge Presiding

* * * * * * *

George R. Tucker
Renee S. Raborn Molland
Greensburg, Louisiana

ATTORNEYS FOR APPELLANT
PLAINTIFF—Bobby Simmons

Brian J. Marceaux
Julius P. Hebert, Jr.
Houma, Louisiana

ATTORNEYS FOR APPELLEES,
DEFENDANTS—Roy Hughes,
Jeffery Jackson, and
Terrebonne Parish
Consolidated Government

* * * * * * *

BEFORE: McCLENDON, WELCH, AND HOLDRIDGE, JJ.

_Holdridge J., dissents. There are genuine issues of fact which preclude the granting of a motion for summary judgment._

**WELCH, J.**

In this damages suit arising from the alleged use of excessive force by arresting officers, the plaintiff appeals a summary judgment rendered in favor of the defendants, finding that there was no genuine issue of material fact that the defendants' conduct did not rise to the level of excessive force; that the defendants were entitled to discretionary immunity; and which dismissed all of the plaintiff's claims against the defendants. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

Around 8:13 p.m. on December 23, 2008, the Houma Police Department ("HPD") dispatched a call for service relative to a hit-and-run. The dispatched call indicated that the perpetrator, later identified as the plaintiff, Bobby Simmons, Sr., was fleeing in a green GMC pick-up truck.

While on patrol in the area, Patrolman Jeffery Jackson observed Mr. Simmons' vehicle. After advising HPD dispatch that he would attempt to stop the vehicle, Ptn. Jackson activated his overhead emergency lights and siren and pursued Mr. Simmons' vehicle. Despite having two flat tires on the passenger side, Mr. Simmons did not stop his vehicle. At some point, Sergeant Roy Hughes and Officer Keith Bergeron joined the pursuit, as did agents with the Louisiana Department of Wildlife and & Fisheries.

As the pursuit continued, Mr. Simmons accelerated to fifty-five miles per hour and appeared to have trouble controlling his vehicle, the passenger side tires leaving the roadway on at least two occasions. At an intersection, Mr. Simmons drove his vehicle into oncoming traffic and forced an approaching vehicle off the roadway. Ultimately, Mr. Simmons ran his vehicle off the right side of the roadway into a field next to Bayou Terrebonne. Ptn. Jackson, Sgt. Hughes, and Officer Bergeron parked their units while the Wildlife & Fisheries agents continued the pursuit with their off-road unit. As the officers approached, Mr.

2

Simmons drove his vehicle into Bayou Terrebonne. With the engine still revving, water began to fill the cabin of Mr. Simmons' vehicle.

The officers issued verbal commands to Mr. Simmons to shut off the engine and get out of his vehicle; however, Mr. Simmons did not respond or follow those commands. Sgt. Hughes and Officer Bergeron jumped into the bed of Mr. Simmons' pick-up truck, trained their duty weapons on Mr. Simmons, and repeated orders for him to exit his vehicle. Again, Mr. Simmons did not respond.

With the water inside the cabin rising to the level of the door handles, the officers determined that they could not remove Mr. Simmons through either of the vehicle doors and would have to extricate him through the vehicle's rear window. Sgt. Hughes advised Mr. Simmons that he was going to break the rear glass window. After Sgt. Hughes broke the rear glass window with his baton, Mr. Simmons did not respond to the officers' verbal commands to exit his vehicle through the rear window. Officer Bergeron transitioned to his TASER after re-holstering his duty weapon and deployed his TASER three times in order to subdue Mr. Simmons for his failure to comply with the officers' verbal commands to exit his vehicle. Sgt. Hughes and Officer Bergeron grabbed Mr. Simmons by his clothes and pulled him through the rear window, placing him on his stomach in the rear of the truck bed. As Sgt. Hughes attempted to handcuff him, Mr. Simmons began swinging his arms and legs around, so Officer Bergeron again deployed his TASER. After handcuffing Mr. Simmons, the officers moved him to the Wildlife and Fisheries unit and drove back to the roadway to await emergency medical services ("EMS"). While Mr. Simmons was incoherent and did not realize what had happened, he was able to identify himself and provide the date and approximate time.

EMS arrived, and responders treated Mr. Simmons for a head laceration. Upon discovering that his blood sugar level was low, paramedics administered Mr.

Simmons a dose of glucose. EMS transported Mr. Simmons to the hospital. No alcohol or illegal drugs were found in Mr. Simmons' system. The treating physician administered two more doses of glucose because Mr. Simmons' blood sugar level again dropped. The treating physician informed Ptn. Jackson that Mr. Simmons' low blood sugar level had likely caused Mr. Simmons' erratic actions that night, *i.e.*, Mr. Simmons not knowing what he was doing, nor being able to remember his actions. Ptn. Jackson briefed Sgt. Hughes on the information he received from the treating physician regarding Mr. Simmons' diabetic condition. Sgt. Hughes maintained that because Mr. Simmons was able to answer his questions prior to treatment by EMS responders, and because of the manner in which Mr. Simmons was able to operate his vehicle during the high-speed chase, Sgt. Hughes believed Mr. Simmons was in full control of his vehicle.

Once Mr. Simmons became lucid, Ptn. Jackson arrested Mr. Simmons at the instruction of Sgt. Hughes. Mr. Simmons was charged with aggravated flight from an officer (La. R.S. 14:108.1(C)); resisting an officer (La. R.S. 14:108(B)(1)(b)); hit-and-run driving (La. R.S. 14:100); and failure to follow traffic-control signals (red light violation) (La. R.S. 32:232(3)(a)).

On October 8, 2009, Mr. Simmons filed a petition for damages against Sgt. Hughes, Ptn. Jackson, and Terrebonne Parish Consolidated Government ("TPCG").[1] Mr. Simmons alleged that during the December 23, 2008 incident, he lost consciousness because of a diabetic episode. He claimed that he awoke to find himself facedown and handcuffed in the bed of a pick-up truck surrounded by numerous officers, including Sgt. Hughes and Ptn. Jackson. Mr. Simmons alleged that he informed the officers that he was a diabetic and in need of care. He claimed that during the incident, he advised the officers to check his wallet for his diabetes card, but that the officers refused. Mr. Simmons averred that his damages

---

[1] Mr. Simmons incorrectly identified TPCG as the "City of Houma" in his petition for damages.

4

were caused by the alleged abuse of force used by Sgt. Hughes and Ptn. Jackson during the December 23, 2008 incident, which consisted of deploying a TASER on Mr. Simmons multiple times and throwing Mr. Simmons to the ground and into the bed of a pick-up truck using excessive force. Mr. Simmons further alleged that Sgt. Hughes and Ptn. Jackson were employed by TPCG and acting within the course and scope of their employment with TPCG at all pertinent times, entitling him to recover under the theory of *respondeat superior*.[2]

On March 18, 2019, the defendants filed a motion for summary judgment on the issue of liability. The defendants asserted that they were entitled to discretionary immunity pursuant to La. R.S. 9:2798.1. The defendants also asserted that they were entitled to immunity from liability for injuries sustained while committing a felony offense pursuant to La. R.S. 9:2800.10, and while

---

[2] Plaintiff's petition alleged, in pertinent part:

2.

On or about December 23, 2008, Plaintiff, **Bobby Simmons, Sr.**, was involved in a motor vehicle accident in which he lost consciousness. Plaintiff awoke to find himself face-down and handcuffed in the bed of a pick-up truck surrounded by numerous officers, including Defendants, **Roy Hughes and Jeffery Jackson**.

3.

That the Plaintiff, **Bobby Simmons, Sr.**, was tazed at least four times during his detention and arrest. That Plaintiff, **Bobby Simmons, Sr.**, informed the officers that he was a diabetic and in need of medical care and to please check his wallet for his diabetes card, to which officers refused.

\*\*\*

4.

Upon information and belief, said incident was due solely to the abuse by force of defendants, **Roy Hughes and Jeffery Jackson**, which consisted particularly, but not absolutely, to the following ostensible acts, to-wit:

A.) Tazing the Plaintiff at least 4 times;

B.) Throwing the plaintiff to the ground and the bed of a pick-up truck while using excessive force on Plaintiff;

C.) All other acts of excessive force and violence and/or fault will be set forth at the trial of this matter.

5.

Plaintiff alleges on information and belief, that at all pertinent times, **Roy Hughes and Jeffery Jackson** were employed by defendant, [**Terrebonne Parish Consolidated Government**]. Plaintiff further alleges that the above named defendants were acting in the course and scope of their employment with [**Terrebonne Parish Consolidated Government**], entitling him to recover under the theory of [*respondent superior*]. [Emphasis in original.]

5

preventing a forcible offense pursuant to La. R.S. 9:2800.19. The defendants sought summary judgment in their favor, finding that they were entitled to immunity, that they did not use excessive force in arresting Mr. Simmons, and that they were not liable to Mr. Simmons for any injuries or damages he may have suffered because of his December 23, 2008 arrest. Mr. Simmons opposed the defendants' motion for summary judgment.

Following a hearing on May 10, 2019, the trial court granted the defendants' motion for summary judgment. That same day, the trial court issued reasons for judgment, granting summary judgment in favor of the defendants and finding that there was no dispute of material fact that the defendants did not use excessive force during the arrest of Mr. Simmons. Because the trial court found that the defendants did not use excessive force, the trial court ruled that the defendants were entitled to immunity from liability under La. R.S. 9:2798.1, La. R.S. 9:2800.10, and La. R.S. 9:2800.19. On June 10, 2019, the trial court signed a judgment in accordance with its reasons for judgment. The June 10, 2019 judgment granted the defendants' motion for summary judgment; held that there were no genuine issues of material fact concerning Mr. Simmons' claims against the defendants; held that under the facts and circumstances of this case, the defendants' conduct did not rise to the level of excessive force; held that the defendants were entitled to immunity under La. R.S. 9:2798.1, La. R.S. 9:2800.10, and La. R.S. 9:2800.19; and dismissed all of Mr. Simmons' claims against the defendants.

Mr. Simmons now appeals, arguing that the trial court erred in finding that the arresting officers' use of a TASER on an unarmed, disoriented, and unresponsive man did not amount to excessive force.

## STANDARD OF REVIEW

A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. **Georgia-Pacific Consumer Operations, LLC v. City of Baton Rouge**, 2017-1553 (La. App. 1st Cir. 7/18/18), 255 So. 3d 16, 21, writ denied, 2018-1397 (La. 12/3/18), 257 So. 3d 194. After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3).

The Code of Civil Procedure places the burden of proof on the party filing a motion for summary judgment. La. C.C.P. art. 966(D)(1). The mover may meet this burden by filing supporting documentary evidence consisting of pleadings, memorandum, affidavits, depositions, answers to interrogatories, certified medical records, stipulations, and admissions with the motion for summary judgment. La. C.C.P. art. 966(A)(4). The mover's supporting documentary evidence must prove the essential facts necessary to carry the mover's burden. Thus, in deciding a motion for summary judgment, it must first be determined whether the supporting documents presented by the mover are sufficient to resolve all material fact issues. **Crockerham v. Louisiana Med. Mut. Ins. Co.**, 2017-1590 (La. App. 1st Cir. 6/21/18), 255 So. 3d 604, 608.

Once the mover properly establishes the material facts by its supporting documents, the mover does not have to negate all of the essential elements of the adverse party's claim, action, or defense. La. C.C.P. art. 966(D)(1); **Babin v. Winn-Dixie Louisiana. Inc.**, 2000-0078 (La. 6/30/00), 764 So. 2d 37, 39; **Hayes v. Autin**, 96-287 (La. App. 3rd Cir. 12/26/96), 685 So. 2d 691, 695, writ denied, 97-0281 (La. 3/14/97), 690 So. 2d 41. The moving party must only point out to the court the absence of factual support for one or more elements essential to the

adverse party's claim, action, or defense. La. C.C.P. art. 966(D)(1); **Celotex Corp. v. Catrett**, 477 U.S. 317, 332, 106 S. Ct. 2548, 2557, 91 L. Ed. 2d 265 (1986) (Brennan, J., dissenting). See also La. C.C.P. art. 966, Comments--2015, Comment (j). The burden then shifts to the non-moving party to produce factual support, through the use of proper documentary evidence attached to its opposition, which establishes the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1). If the non-moving party fails to produce sufficient factual support in its opposition which proves the existence of a genuine issue of material fact, Article 966(D)(1) mandates the granting of the motion for summary judgment. **Babin**, 764 So. 2d at 40. See also **Celotex Corp.**, 477 U.S. at 326, 106 S.Ct. at 2554.

Material facts are those that potentially insure or preclude recovery, affect the litigant's success, or determine the outcome of a legal dispute. **Daniels v. USAgencies Cas. Ins. Co.**, 2011-1357 (La. App. 1st Cir. 5/3/12), 92 So. 3d 1049, 1055. Appellate courts review evidence *de novo* using the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Thus, appellate courts ask the same questions: whether there is any genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. **Georgia-Pacific Consumer Operations, LLC**, 255 So. 3d at 22.

### EXCESSIVE FORCE

The use of force by law enforcement officers must be tested using the "reasonable force" standard established by La. C.Cr.P. art. 220, which states: "A person shall submit peaceably to a lawful arrest. The person making a lawful arrest may use reasonable force to effect the arrest and detention, and also to

overcome any resistance or threatened resistance of the person being arrested or detained." The "reasonable force" test precludes clearly inappropriate force. See La. C.Cr.P. art. 220, Official Revision Comment--1966 (b). See also **Kyle v. City of New Orleans**, 353 So. 2d 969, 972 (La. 1977).

The use of force when necessary to effect an arrest is a legitimate police function, whether such force is directed against the person arrested or one interfering with the arrest. **Picou v. Terrebonne Par. Sheriff's Office Through Rozands**, 343 So. 2d 306, 308 (La. App. 1st Cir. 1977). If an arresting officer uses unreasonable or excessive force, the officer and his employer are liable for any injuries which result. See La. C.C. art. 2320. See also **Picou**, 343 So. 2d at 308.

The HPD Policy and Procedure Manual, General Order Number G2-14, **PROCEDURES**, Section B provides:

> *2. General Guidelines*
>
> a. *The decision to use force must be based on reasonableness and necessity, not emotions.*
>
>> *1) The lawful use of force in any degree must be based on a reasonable judgment that force is necessary under the circumstances. Therefore, for example, an officer shall always prevent anger from affecting his decision to use force.*
>
> b. *Force should be used only when it is reasonable to believe that it is immediately necessary.*
>
>> *1) There must be an immediate and reasonable need for the force used. When force in any degree (but particularly deadly force) is used against a person, the officer's action will be judged in large part by whether the force was reasonably necessary at the moment of its use. Force, particularly deadly force, should not be used except as a last resort.*
>
> \*\*\*
>
> *3. Use of Force in Self-Defense*
>
> a. *An officer may use only the degree of force which is reasonably and immediately necessary to protect himself.*
>
> \*\*\*
>
> *5. Use of Force to Effect an Arrest*

a. *A person must submit peaceably to a lawful arrest, but there is no requirement that he submit peaceably to an unlawful arrest.*

    1) *...If an officer uses force to effect what he knew or should have known was an unlawful arrest, his action will probably constitute a battery.*

***

    2) *Louisiana courts have taken the position that a person has the right to resist an unlawful arrest. An officer, therefore, should do everything possible to ensure that any arrest he plans is lawful and that he proceeds in a lawful manner in making the arrest.*

b. *When making a lawful arrest, an officer may use only reasonable force to effect the arrest and detention. He may not use unreasonable force or subject the arrested person to unjustifiable violence.*

    1) *In addition to the "lawful arrest" requirement, the officer must limit the degree of force he employs to affect an arrest to "reasonable force." This simply means that the degree of force must be limited to that which is reasonable (not extreme or excessive) and necessary to accomplish the arrest.*

c. *One making a lawful arrest may use reasonable force to overcome any resistance or threatened resistance of the person being arrested or detained.*

    1) *An arresting officer may meet force (or threatened force) with a degree of force reasonably necessary to subdue a suspect who resists. An arresting officer who meets resistance or opposition is not required to retreat or to abort his purpose. If the dignity of the law and of those who are charged with its enforcement is to be maintained, an officer must stand his ground and use all force reasonably necessary to arrest and detain the suspect. However, one of the law enforcement officer's primary functions is to protect the public. Therefore, if an arrest at a particular time or place will create a foreseeable and great risk of harm to the public, the wiser course of action may be to delay the arrest.*

Whether the force used is reasonable depends upon the totality of the facts and circumstances in each case. A court must evaluate the officers' actions against

those of ordinary, prudent, and reasonable men placed in the same position as the officers and with the same knowledge as the officers. The degree of force employed is a factual issue. **Kyle**, 353 So. 2d at 973. Several factors to be considered in making this determination are the known character of the arrestee, the risks and dangers faced by the officers, the nature of the offense involved, the chance of the arrestee's escape if the particular means are not employed, the existence of alternative methods of arrest, the physical size, strength, and weaponry of the officers as compared to the arrestee, and the exigencies of the moment. **Kyle**, 353 So. 2d at 973.

## DISCRETIONARY IMMUNITY: OFFICERS OR EMPLOYEES OF A PUBLIC ENTITY

Louisiana Revised Statutes 9:2798.1 provides, in pertinent part:

> A. As used in this Section, "public entity" means and includes the state and any of its branches, departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, employees, and political subdivisions and the departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, and employees of such political subdivisions.
>
> B. Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties.
>
> C. The provisions of Subsection B of this Section are not applicable:
>
> (1) To acts or omissions which are not reasonably related to the legitimate governmental objective for which the policymaking or discretionary power exists; or
>
> (2) To acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct.

Louisiana Revised Statutes 9:2800.10 provides, in pertinent part:

> A. No person shall be liable for damages for injury, death, or loss sustained by a perpetrator of a felony

offense during the commission of the offense or while fleeing the scene of the offense.

B. The provisions of this Section shall apply regardless of whether the injury, death, or loss was caused by an intentional or unintentional act or omission or a condition of property or a building. However, the provisions of this Section shall not apply if injury to or death of a perpetrator results from an intentional act involving the use of excessive force.

Louisiana Revised Statutes 9:2800.19 provides:

A. A person who uses reasonable and apparently necessary or deadly force or violence for the purpose of preventing a forcible offense against the person or his property in accordance with R.S. 14:19 or 20 is immune from civil action for the use of reasonable and apparently necessary or deadly force or violence.

B. The court shall award reasonable attorney fees, court costs, compensation for loss of income, and all expenses to the defendant in any civil action if the court finds that the defendant is immune from suit in accordance with Subsection A of this Section.

The Louisiana Supreme Court has held that La. R.S. 9:2798.1 is "clear and unambiguous" and applies to "policymaking or discretionary acts when such acts are within the course and scope of ... lawful powers and duties." **Gregor v. Argenot Great Central Insurance Company**, 2002-1138 (La. 5/20/03), 851 So. 2d 959, 967; **Herrera v. First National Insurance Company of America**, 2015-1097 (La. App. 1st Cir. 6/3/16), 194 So. 3d 807, 814, writ denied, 2016-1278 (La. 10/28/16), 208 So. 3d 885. The defendant, TPCG, is clearly a "public entity" as defined by the statute, and defendants Ptn. Jackson and Sgt. Hughes are "officers or employees" of a public entity as contemplated by the statute. However, the immunity provided by La. R.S. 9:2798.1 is not applicable to the defendants if their actions constituted "criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct." La. R.S. 9:2798.1(C)(2); **Miller v. Village of Hornbeck**, 2010-1539 (La. App. 3rd Cir. 5/11/11), 65 So. 3d 784, 788.

Whether a given set of conduct rises to the level of "criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct" is a standard created by law to determine whether liability will result from that conduct; as such, the question of whether a given set of conduct rises to the level of "criminal, willful, outrageous, reckless, or flagrant misconduct" is purely a question of law, and is within the province of the trial court to determine at the summary judgment stage. **Marshall v. Sandifer**, 2017-1246 (La. App. 1st Cir. 9/21/18), 2018 WL 4520245, at *5 (unpublished), writs denied, 2018-1907, 2018-1991 (La. 2/11/19), 263 So. 3d 896, 1152 (citing **Haab v. East Bank Consolidated Special Service Fire Protection District of Jefferson Parish**, 2013-954 (La. App. 5th Cir. 5/28/14), 139 So. 3d 1174, 1180-81, writ denied, 2014-1581 (La. 10/24/14), 151 So. 3d 609).

Once a public official raises the defense of qualified immunity, the burden rests on the plaintiff to rebut it. See **Trantham v. City of Baker**, 2010-1695 (La. App. 1st Cir. 3/25/11), 2011 WL 1103628, at *4 (unpublished), writ denied, 2011-1049 (La. 6/24/11), 64 So. 3d 221. Thus, the question before the trial court on the defendants' motion for summary judgment, and now before us, is whether the defendants' actions constituted "criminal, willful, outrageous, reckless, or flagrant misconduct." In order for the plaintiff to defeat the defendants' claims of discretionary immunity, it was incumbent upon him to put forth evidence showing that the conduct of the defendants rose to the level of misconduct required by La. R.S. 9:2798.1(C)(2). **Marshall**, 2018 WL 4520245 at *5 (citing **Haab**, 139 So. 3d at 1179-80).

## DISCUSSION

In support of their motion for summary judgment, the defendants submitted the affidavit of Ptn. Jackson. According to Ptn. Jackson, on the night of the incident after he was alerted by dispatch of a hit-and-run driver fleeing the scene in

a green GMC pickup truck with two flat tires, he arrived in the area and noticed the pickup truck. Ptn. Jackson stated that he immediately activated his lights and siren, but that Mr. Simmons did not stop, so he gave pursuit. According to Ptn. Jackson, at an intersection with a red light, Mr. Simmons stopped his vehicle and waited for the light to turn green, at which point Ptn. Jackson activated his PA system and instructed Mr. Simmons several times to shut his engine off. However, Ptn. Jackson stated that Mr. Simmons drove off when the light turned green. Ptn. Jackson pursued him in a high-speed chase. During the pursuit, Ptn. Jackson stated that Mr. Simmons appeared to have trouble controlling his vehicle and that on two occasions, his passenger side tires left the roadway. As the vehicles approached another intersection, Ptn. Jackson stated that Mr. Simmons swerved into the oncoming lane of traffic, forcing a vehicle off the roadway. During the pursuit, Officer Bergeron and Sgt. Hughes joined the pursuit, as later did Wildlife & Fisheries agents. With Mr. Simmons accelerating to approximately fifty-five miles per hour and having trouble controlling his vehicle, Sgt. Hughes ordered the officers to slow their units down. According to Ptn. Jackson, after passing the Houma airport, Mr. Simmons lost control of his vehicle and ran off the roadway into a field next to Bayou Terrebonne. Ptn. Jackson stated that he, Officer Bergeron, and Sgt. Hughes pursued Mr. Simmons' vehicle on foot while the Wildlife & Fisheries agents pursued in their off-road vehicle. According to Ptn. Jackson, Mr. Simmons then drove his vehicle into Bayou Terrebonne. Ptn. Jackson stated that the officers gave very loud verbal commands to Mr. Simmons to shut his engine off and to get out of his vehicle, which Mr. Simmons failed to obey. At that point, Ptn. Jackson stated that Sgt. Hughes and Officer Bergeron jumped into the bed of Mr. Simmons' pickup truck, whereupon Sgt. Hughes busted out the glass of the rear window and continued to give Mr. Simmons loud verbal commands to get out of his truck, otherwise he would be TASED. According to

14

Ptn. Jackson, Mr. Simmons failed to respond to commands, so Officer Bergeron TASED him. After the officers pulled Mr. Simmons out of the truck and laid him in the truck bed, Ptn. Jackson stated that Mr. Simmons resisted arrest by twisting and pulling. Officer Bergeron TASED Mr. Simmons two more times. Ptn. Jackson believed that Mr. Simmons was on some type of drugs. After handcuffing Mr. Simmons, Ptn. Jackson stated that the officers advised Mr. Simmons of his **Miranda** rights and moved him to the bed of the Wildlife & Fisheries unit to await EMS. While waiting for an ambulance, Ptn. Jackson stated that Mr. Simmons identified himself and was able to give the officers the date and approximate time.

In further support of their motion for summary judgment, the defendants relied upon the affidavit and expert report of Kerry J. Najolia, who is retired from the Jefferson Parish Sheriff's Office and has over twenty-eight years of academic instructional experience as a staff instructor, assistant training director, and training director for the Jefferson Parish Sheriff's Office Training Academy. Mr. Najolia has consulted on law enforcement matters since 1986. In this matter, Mr. Najolia reviewed Mr. Simmons' petition for damages; TPCG's answer and affirmative defenses; HPD internal affairs investigation; HPD offense/case report and criminal history report; HPD's use of force policy, training policy, arrest/booking procedures, and prisoner transport procedures; TPCG's answers and responses to interrogatories and requests for production of documents; and the Peace Officers Standards and Training Council ("POST") certificates for Sgt. Hughes, Ptn. Jackson, and Officer Bergeron.[3]

Mr. Najolia concluded that all of the officers were current in their training, within the course and scope of their employment during the incident, and easily identified as peace officers because the men were clad in official uniforms and driving marked police units. Mr. Najolia stated that all of the officers

---

[3] As noted in his affidavit, these documents were attached to Mr. Najolia's expert report.

appropriately responded to dispatch's call regarding the hit-and-run by attempting an investigatory stop of the suspected vehicle, alerting other officers of their positions, giving loud verbal commands to Mr. Simmons to stop his vehicle, pursing the vehicle, and then slowing down once Mr. Simmons began driving without due regard for the safety of others. Mr. Najolia concluded that the plan developed and deployed by Sgt. Hughes and Officer Bergeron for extricating Mr. Simmons from his submerged cabin while the engine was racing and the vehicle's tires were spinning was consistent with the officers' training protocols. Mr. Najolia further stated that it was appropriate for Sgt. Hughes and Officer Bergeron to have their duty weapons trained on Mr. Simmons for safety reasons, and that it was appropriate for Officer Bergeron to de-escalate his response to include TASER since there were other officers who had lethal cover. Mr. Najolia stated that "[o]fficers are trained that they can use less-lethal force to control resistant and/or aggressive behavior." Mr. Najolia opined:

> Mrs. Simmons' actions of fleeing from [o]fficers upon their approach based on the totality of all of the other circumstances known to them at that time surrounding this incident provided officers the lawful justification to pursue Mr. Simmons in an effort to conduct an arrest for his criminal law violations.
>
> Mr. Simmons' actions including but not limited to crashing into a vehicle and fleeing the scene, refusing to stop for [Ptn.] Jackson and the other [o]fficers, refusing to obey verbal commands from the officers while they were attempting to effect a lawful arrest[,] and resisting arrest are criminal violations....
>
> &ast;&ast;&ast;
>
> It is authorized and in accordance with [HPD] policy, procedures, protocols[,] and POST Use of Force Training for officers to use less lethal force to control resistant and or aggressive behavior during detentions and/or arrest situations.
>
> &ast;&ast;&ast;
>
> Although the credibility of this case will be judged and determined by the trier of fact, in my opinion, based on the totality of the circumstances, the officers' use of force was justified, reasonable[,] and in accordance with

16

policy, procedures, protocols[,] and training. These officers responded as they were trained based on POST and the [HPD's] training principles.

Officer Bergeron's use of Non-Lethal Force (activating the TASER[)] (3) three times-in a probe mode was not excessive and was reasonable based on Officer Bergeron's perception of an imminent, non-deadly threat.

Based on Officer Bergeron's observations, he stated that Mr. Simmons refused to obey verbal commands, made a hissing sound[,] and moved in a manner that placed Officer Bergeron in fear of being injured. Training allows officers to use less lethal force options such as a TASER to control resistant or aggressive behavior....

*** 

At that point, Officer Bergeron de-escalated his response and with the assistance of Sergeant Hughes, physically extricated Mr. Simmons through the rear truck window. Officer Bergeron covered Mr. Simmons as Sergeant Hughes began to handcuff the perpetrator.

Officer Bergeron stated that he did not activate his TASER with the second cartridge until Mr. Simmons began to actively resist Sergeant Hughes['] efforts to handcuff him.

Based on contemporary Officer Survival Training, it was appropriate for Officer Bergeron to escalate his response and activate his TASER the [third] time during this incident based on Mr. Simmons['] active resistance.

It was according to protocol to contact Acadian Ambulance EMS to examine Mr. Simmons for any injuries that he may have sustained during the traffic crashes or this arrest.

It was according to protocol to transport Mr. Simmons to Chabert Hospital for additional medical evaluations or treatment.

Our review of the record indicates that the defendants properly established the material facts through their supporting documentary evidence and pointed out the absence of factual support for the contention that the defendants' actions constituted "criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct" based on the totality of the facts and circumstances of this case. See La. C.C.P. art. 966(D)(1). See also La. R.S. 9:2798.1(C)(2) and **Miller**, 65 So. 3d at 788. Accordingly, the burden shifted to

17

Mr. Simmons as the non-moving party to produce factual support, through the use of proper documentary evidence attached to his opposition, which establishes the existence of a genuine issue of material fact or that the defendants are not entitled to judgment as a matter of law. See La. C.C.P. art. 966(D)(1).

In opposition to the motion for summary judgment, Mr. Simmons relied upon the HPD Internal Affairs Investigation report into Sgt. Hughes' performance relative to the December 23, 2008 incident, as well as Mr. Najolia's affidavit. Both documents were also submitted by the defendants in support of their motion for summary judgment. Mr. Simmons argued that on the night of the incident, he was traveling from church when he experienced an episode due to his diabetic diagnosis; his blood sugar level dropped unknown to him, and as a result, he was involved in a motor vehicle collision. Mr. Simmons could not recall any events that happened from the time he left church to the time of his arrest. Despite being informed by the EMS responders and the treating physician at the hospital that Mr. Simmons' behavior was normal for a person experiencing a diabetic episode, the HPD officers still arrested him. He argued that all charges against him were later dropped by the district attorney. The HPD Internal Affairs Investigation report into Sgt. Hughes' performance relative to the incident concluded that Sgt. Hughes "used poor judgment with instructing [Ptn.] Jackson to arrest Mr. Simmons" after he was treated at the hospital. The report concluded that Sgt. Hughes "ignored the medics and physician's evaluation of Mr. Simmons' condition. He could have had [Ptn.] Jackson's report forwarded to the District Attorney's Office for review to determine whether or not charges should [have] been filed against him."

After a thorough review of the evidence admitted in connection with the motion for summary judgment, we do not find that a genuine issue of material fact was created regarding whether the defendants' actions constituted "criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant

18

misconduct." The defendants did gain knowledge after-the-fact of Mr. Simmons' diabetic condition and that a diabetic episode was the likely explanation of his erratic actions. During the incident, however, the defendants had no knowledge of the diabetic character of Mr. Simmons. Furthermore, Mr. Simmons committed what appeared to be a hit-and-run—a felony pursuant to La. R.S. 14:100—and apparent flight from officers—also a felony under La. R.S. 14:108.1(C).

Ptn. Jackson was the officer who activated his overhead emergency lights and siren and began the pursuit of Mr. Simmons' vehicle after HPD dispatch indicated that Mr. Simmons had engaged in a hit-and-run. Sgt. Hughes was the officer who broke Mr. Simmons' rear window and physically extricated him from his nearly submerged cabin and handcuffed him after Mr. Simmons ran his vehicle into Bayou Terrebonne.[4] As noted by Mr. Najolia in his expert report, the defendants' use of force in these instances "was justified, reasonable[,] and in accordance with policy, procedures, protocols[,] and training."[5] HPD Officer

---

[4] Sgt. Hughes is the supervising officer who instructed Ptn. Jackson to later arrest Mr. Simmons at the hospital. Unrelated to Sgt. Hughes' alleged use of "excessive force" during the incident, Lieutenant Milton M. Wolfe, Jr., an investigating officer with the HPD Public Integrity Division, investigated the question of whether Sgt. Hughes made a competent decision to have Mr. Simmons arrested, or whether it was more logical for Sgt. Hughes to have Ptn. Jackson complete his report, forward the matter to the district attorney's office for review, and allow that office to make the decision whether Mr. Simmons should have been charged, due to his diabetic condition. Lt. Wolfe's HPD internal report concluded that Sgt. Hughes failed to perform the duties of his position in a "satisfactory manner." Following a hearing, the HPD disciplinary board voted 6-1 in favor that Sgt. Hughes failed to perform the duties of his position in a "satisfactory manner," in violation of Article 61 of the HPD Rules of Conduct. As a result of Sgt. Hughes' conduct after the incident, along with previous poor evaluations and job performance, the interim HPD police chief, Todd. M. Duplantis, demoted Sgt. Hughes from the rank of Permanent Police Sergeant to the position of lower class Probational Patrolman First Class.

[5] As noted, Officer Bergeron—not a named defendant in this case—is the only responding officer who employed TASER on Mr. Simmons during the incident. While the defendants' expert Mr. Najolia opined that TASER is non-lethal and its use is reasonable based on an officer's perception of an imminent, non-deadly threat, the HPD internal report prepared by Lt. Wolfe (see n.4, *supra*.) indicated that he viewed the TASER audio and video footage of the incident downloaded from Officer Bergeron's TASER. Lt. Wolfe opined, "from what I observed, it is my professional opinion that it was 'excessive.'" HPD Training Officer Karl Beattie and HPD Captain Greg Hood, the Uniform Car Patrol Watch Commander, viewed the videotape with Lt. Wolfe. They concurred with Lt. Wolfe's assessment that Officer Bergeron "appeared to be, extreme with deploying the [TASER] on Mr. Simmons."

The record on appeal shows that Plaintiff/Appellant Mr. Simmons **did not name** Officer Bergeron as a defendant in this case. Any inadequacy of the record is imputed to the appellant.

Keith Bergeron—not a named defendant in this case—is the only responding officer who employed TASER on Mr. Simmons during the incident.

Based on the totality of the facts and circumstances of this case, including the known character of Mr. Simmons and nature of the offenses involved, the defendants' use of force in this instance was reasonable when evaluated against that of ordinary, prudent and reasonable men placed in the same position as the officers and with the same knowledge as the officers. Mr. Simmons pointed out no facts that elevated the defendants' actions to the level of misconduct required by La. R.S. 9:2798.1(C)(2). Therefore, the defendants are entitled to statutory immunity pursuant to La. R.S. 9:2798.1, La. R.S. 9:2800.10, and La. R.S. 9:2800.19. Having determined that the defendants are immune from liability, they are entitled to summary judgment dismissing Mr. Simmons' petition and all of his claims.

## DECREE

The trial court's June 10, 2019 judgment is affirmed. All costs of this appeal are assessed to the plaintiff, Bobby Simmons, Sr.

**AFFIRMED.**

---

See La. C.C.P. art. 2128. See also **Rover Grp., Inc. v. Clark**, 2018-1576 (La. App. 1st Cir. 12/12/19), 291 So. 3d 699, 707, writ denied, 2020-00101 (La. 3/9/20), 294 So. 3d 481.